**KINGSLEY & KINGSLEY, APC**
ERIC B. KINGSLEY, Esq., Cal. Bar No. 185123
eric@kingsleykingsley.com
KELSEY M. SZAMET, Esq., Cal. Bar No. 260264
kelsey@kingsleykingsley.com
JUSTIN M. AUFDERHAR, Esq., SBN-314023
justin@kingsleykingsley.com
16133 Ventura Blvd., Suite 1200
Encino, CA 91436
Telephone: (818) 990-8300
Fax: (818) 990-2903

**DAVTYAN PROFESSIONAL LAW CORPORATION**
EMIL DAVTYAN, Esq. SBN-299363
support@davtyanlaw.com
5959 Topanga Canyon Blvd., Suite 130
Woodland Hills, California 91367
(818) 875-2008, Fax (818) 722-3974

Attorneys for Plaintiff and the Proposed Class

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PANIANI TAAFUA, an individual, on behalf of himself and others similarly situated<br><br>PLAINTIFF,<br><br>v.<br><br>QUANTUM GLOBAL TECHNOLOGIES, LLC; and DOES 1 thru 50, inclusive,<br><br>DEFENDANTS. | CASE NO.  5:18-cv-06602-VKD<br><br>[Case Assigned for All Purposes to Hon. Judge Virginia K. DeMarchi]<br><br>**PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date:    August 27, 2019<br>Time:    August 27, 2019<br>Dept.:    Courtroom 2, 5th Floor |

## TABLE OF CONTENTS

I.    PROCEDURAL HISTORY AND FACTUAL BACKGROUND.................1

II.   SUMMARY OF THE SETTLEMENT'S KEY PROVISIONS ....................3

   1.    Monetary Recovery ...........................................................................3

   2.    The Release ........................................................................................4

   3.    The Settlement Mechanism and Administration.................................5

III.  THE LEGAL FRAMEWORK WEIGHS IN FAVOR OF GRANTING
PRELIMINARY APPROVAL OF THE SETTLEMENT ...........................6

   1.    The Settlement Class Should be Certified ..........................................7

      a.    All Four FRCP 23(a) Criteria are Met. ......................................7

      b.    The FRCP 23(b)(3) Criteria are Met...........................................10

   2.    The Proposed Settlement is Fair, Just and Adequate. .........................11

      a.    The Settlement is Fair. ...............................................................12

      b.    The Settlement is Reasonable. ....................................................19

      c.    The Settlement is Adequate. .......................................................21

   3.    The Notice Adequately Informs Class Members of the Settlement
and Their Rights Thereunder................................................................22

IV.   LOCAL PROCEDURAL GUIDANCE FOR CLASS ACTION
SETTLEMENTS, PRELIMINARY APPROVAL.......................................23

V.    CONCLUSION.........................................................................................23

**MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

# TABLES OF AUTHORITIES

**Page(s)**

## Federal Cases

*Acosta v. Equifax Info. Servs. LLC,*
243 F.R.D. 377 (C.D. Cal. 2007)..........................................................................12

*Alberto v. GMRI, Inc.,*
252 F.R.D. 652 (E.D. Cal. 2008)........................................................................6, 7

*Banga v. Equifax Info. Servs., LLC,*
473 Fed. App'x 712 (9th Cir. 2012)....................................................................20

*Boeing Co. v. Van Gemert,*
444 U.S. 472 (1980) ............................................................................................13

*City of Detroit v. Grinnell Corp.,*
495 F.2d 448 (2d Cir. 1974) ................................................................................22

*Class Plaintiffs v. City of Seattle,*
955 F.2d 1268 (9th Cir. 1992) ..............................................................................6

*Collins v. Cargill Meat Solutions Corp.,*
274 F.R.D. 294 (E.D. Cal. 2011) ..........................................................................5

*Hanlon v. Chrysler Corp.,*
150 F.3d 1011 (9th Cir. 1998) .............................................................. 8, 9, 10, 14

*Hesse v. Sprint Corp.,*
598 F.3d 581 (9th Cir. 2010) .................................................................................5

*Hillson v. Kelly Services,*
E.D. Mich. No. 2:15cv10803, 2017 WL 279814 (E.D. Mich. Jan. 23, 2017) .....20

Id. *League of Martin v. City of Milwa,*
*ukee*, 588 F. Supp. 1004 (E.D. Wis. 1984).........................................................18

*In re Activision Securities Litigation,*
723 F. Supp. 1373 (N.D. Cal. 1989)............................................................. 13, 14

*In re Omnivision Tech., Inc.,*
559 F.Supp.2d 1036 (N.D. Cal. 2008)..................................................................13

*In re Pacific Enterprises Securities Litigation,*
47 F.3d 373 ...........................................................................................................14

**MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

*In re Prudential Ins. Co. America Sales Practice Litigation Agent Actions*,
(3d Cir. 1998) 148 F.3d 283 ...................................................................16

*In re Washington Public Power Supply System Securities Litigation*,
(9th Cir. 1994) 19 F.3d 1291 ...............................................................15

*In re Wells Fargo Home Mortg. Overtime Pay Litigation*,
571 F.3d 953 (C.A.9 2009)...................................................................10

*In re Wells Fargo Home Mortgage Overtime Pay Litig.*,
527 F. Supp.2d 1053 (N.D. Cal. 2007)..................................................10

*Knight v. Red Door Salons, Inc.*,
2009 WL 248367 (N.D. Cal. 2009).................................................. 14, 15

*Linney v. Cellular Alaska P'ship*,
151 F.3d 1234 (9th Cir. 1998) .............................................................21

*Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*,
244 F.3d 1152 (9th Cir) ................................................................. 10, 11

*Milbourne v. JRK Residential Am., LLC*,
No. 3:12CV861, 2016 WL 1071569 (E.D. Va. Mar. 15, 2016)............................7

*Missouri v. Jenkins by Agyei*,
(1989) 491 U.S. 274 ............................................................................15

*Molski v. Gleich*,
318 F.3d 937 (9th Cir. 2003) ...............................................................12

*Moore v. Rite Aid Headquarters Corp.*,
No. 13–1515, 2015 WL 3444227 (E.D. Pa May 29, 2015) ...................................7

*Offices for Justice v. Civil Service Com'n*,
688 F.2d 615 (9th Cir. 1982) ...............................................................21

*Phillips Petroleum Co. v. Shutts*,
472 U.S. 797, (1985) ...........................................................................11

*Powers v. Eichen*,
229 F.3d 1249 (9th Cir. 2000)...............................................................14

**MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

*Quintero v. Mulberry Thai Silks, Inc.*,
   No. 08-2294, 28 I.E.R. Cas. (BNA) 607, 2008 U.S. Dist. LEXIS 84976, at *7
   (N.D. Cal. Oct. 22, 2008) ...........................................................................................7

*Spokeo, Inc. v. Robins*,
   578 U.S. ---, 136 S.Ct. 1540 (2016) ........................................................................19

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) .......................................................................... 8, 13, 14

*Van Bronkhorst v. Safeco Corp.*,
   529 F.2d 943 (9th Cir. 1976) ....................................................................................21

*Vincent v. Hughes Air West, Inc.*,
   557 F.2d 759 (9th Cir. 1977) .............................................................................. 12, 13

*Vizcaino v. Microsoft Corp.*,
   290 F.3d 1043  (9th Cir. 2002) ........................................................................... 15, 16

*Wirt v. Bon-Ton Stores, Inc*.,
   134 F. Supp.3d 852 (M.D. Pa. 2015) ........................................................................7

*Young v. Katz,*
   447 F.2d 431 (5th Cir. 1971) ....................................................................................21

**State Cases**

*Koehl v. Verio,*
   142 Cal. App. 4th 1313 (2006) .................................................................................19

**Federal Statutes**

15 U.S.C. § 1681 .............................................................................................................1

15 U.S.C. § 1681b .........................................................................................................4

15 U.S.C. § 1681b(b)(2)(A)(i) ......................................................................................8

15 U.S.C. § 1681b(b)(2)(A)(i)-(ii) ...............................................................................2

15 U.S.C. § 1681p (1)-(2) .............................................................................................7

28 U.S.C. § 1715 ..........................................................................................................23

**Federal Rules**

Federal Rules of Civil Procedure 1 ............................................................................21

Federal Rules of Civil Procedure 23(a) .......................................................................7

**MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

Federal Rules of Civil Procedure 23(a)(1)...................................................7

Federal Rules of Civil Procedure 23(a)(2)...............................................7, 8

Federal Rules of Civil Procedure 23(a)(3)...................................................8

Federal Rules of Civil Procedure 23(a)(4)...................................................9

Federal Rules of Civil Procedure 23(b)(3) ...............................................10

Federal Rules of Civil Procedure 23(e) ...............................................7, 10

Federal Rules of Civil Procedure 23(e)(2)...............................................11

Federal Rules of Civil Procedure Rule 23 ...............................................23

**<u>Other Authorities</u>**

*4 Newberg on Class Actions* § 11.41 ...................................................21

*Manual for Complex Litigation* § 21.62 ........................................ 11, 21

*Manual for Complex Litigation* § 21.632 ..............................................12

*Manual for Complex Litigation* § 21.632 (2004).....................................6

*Marchioli v. Pre-Employ.com, Inc.*, Case No. 16-2305,

    2017 U.S. Dist. LEXIS 217648, at *31-32 (C.D. Cal. June 30, 2017) ...............19

**MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

## I.     INTRODUCTION

Plaintiff PANIANI TAAFUA, an individual ("Plaintiff"), on behalf of himself, and on behalf of all persons similarly situated, through his attorneys of record ("Class Counsel") submits this Motion for Preliminary Approval of Class Action Settlement regarding the allegations in Plaintiff's Complaint (the "Lawsuit"), which asserts claims under the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* (the "FCRA"). Plaintiff and Defendant QUANTUM GLOBAL TECHNOLOGIES, LLC ("Defendant")(collectively with Plaintiff, the "Parties"), reached an agreement to settle the Lawsuit. Under Federal Rules of Civil Rule (FRCP"), Rule 23(e), Plaintiff asks this Court for its preliminary approval of the Parties' "Class Action Release and Settlement Agreement" ("Settlement" or "Settlement Agreement"), which is concurrently submitted as Exhibit 1 to the Declaration of Kelsey M. Szamet ("Szamet Decl.").

## II.     PROCEDURAL HISTORY AND FACTUAL BACKGROUND

On October 30, 2018, Plaintiff filed his Complaint in the United States District Court for the Northern District of California, alleging two causes of action as putative class actions under the FCRA. (ECF No. 1). More specifically, Plaintiff contends that Defendant violated the FCRA by improperly including a liability waiver in its authorization and disclosure form.  Specifically, Plaintiff contends that during the relevant period, Defendant has had a consistent policy of requiring Plaintiff and all members of the Proposed Class[1] to execute a "Application Notice and Consent Document" form ("authorization and disclosure form") permitting First Contact HR to obtain a consumer report verifying the applicants' background and experience.   Plaintiff alleges that Defendant included a liability waiver in the authorization and disclosure form.  Plaintiff contends that by including a liability

---

[1] "Class" or "Class Members" means all individuals who applied for employment with and/or were employed by Defendant in the United States and were the subject of a consumer report that was procured by Defendant or caused to be procured by Defendant through third-party consumer reporting agency First Contact HR during the Class Period.

**MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

release in its authorization and disclosure form, Defendant violated 15 U.S.C. §1681b(b)(2)(A)(i)-(ii).

The Parties engaged in extensive discussions about their respective positions and the information and data needed to properly evaluate the merits of the claims alleged. Szamet Decl., ¶ 5. The Parties reached a proposed class action settlement on May 8, 2019 through arms-length direct negotiations, which was memorialized and executed on July 16, 2019, now submitted to this Court for preliminary approval. Id.

On May 9, 2019, the Court issued an Order setting Plaintiff's deadline to file his Motion for Preliminary Approval for June 25, 2019. (ECF No. 31.) Pursuant to the Parties' Stipulation[2], the Court extended Plaintiff's deadline to July 19, 2019. (ECF No. 33.)

> The operative complaint identified a class defined as:
> all persons in the United States who signed a background check form as administrated by First Contact HR that included an authorization and a liability release clause at any time during the period beginning five (5) years prior to the filing of this Complaint and ending on the date as determined by the Court

ECF 1, ¶ 5.

The Settlement Class, which includes approximately 1,058 individuals, is defined as:

> all individuals who applied for employment with and/or were employed by Defendant in the United States and were the subject of a consumer report that was procured by Defendant or caused to be procured by Defendant through third-party consumer reporting agency First Contact HR during the Class Period.

See Szamet Decl., Exhibit 1, Settlement at § I(28).

The "Class Period" is October 30, 2013 to December 31, 2018. *See*

---

[2] Stipulation to Extend Plaintiff's Deadline for Filing Motion for Preliminary Approval of Class Action Settlement (ECF No. 32).

**MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

Settlement, § I(7). While the class start period is the same for both the settlement class and the complaint (5 years prior to the filing of this Action), the end period has been narrowed to end on December 31, 2018.[3]

## III.    SUMMARY OF THE SETTLEMENT'S KEY PROVISIONS

### 1.    Monetary Recovery

The Settlement provides a maximum recovery of $125,902 (the "Global Settlement Fund"). Settlement at §§ II(2) and III(3). If the Court approves the Settlement, the following estimates the breakdown of payments from the Global Settlement Fund:

- $59,934.67 [4] for estimated settlement funds to the Settlement Class (the "Net Settlement Fund");
- $16,000 for administration costs regarding the Settlement;
- $5,000 for a Service Award to Plaintiff; and
- $41,967.33 for attorneys' fees and $3,000 in litigation costs. (the "Class Counsel Award").

*Settlement* at § III(3); Szamet Dec. at ¶ 8; See also PGCAS, Section 1)(f).

The amount of the Net Settlement Fund is contingent on the number of consumer reports obtained on individuals who remain in the Settlement Class. Szamet Decl., ¶ 9. The number of consumer reports obtained for each Settlement Class member may differ, and thus Settlement Class members may be entitled to more, or less, than others, based on the number of consumer reports obtained for each of them. Szamet Decl., ¶10. As of December 31, 2018, with Defendant's class data finalized, Defendant has determined that there are 1,058 Class Members, with respect to whom 1,476 consumer reports were obtained. Szamet Decl., ¶11. Based on this data, the Parties anticipate the approximate gross payment per class member on average will be $119 with an approximate net payment on average of

---

[3] See Local Procedural Guidance for Class Action Settlements, Preliminary Approval ("PGCAS"), Section 1)(a).

[4] See PGCAS, Section 1)(e).

**MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

$56.65.[5][6] Szamet Decl. ¶ 12.

This is a non-reversionary, total payout Settlement.[7] Settlement III(3). Any funds remaining in the Global Settlement Fund due to uncashed Settlement checks (after a 180-day negotiability period) will be remitted to the Education Fund of the National Association of Consumer Advocates ("NACA Education Fund"), a 501c(3) non-profit organization. Settlement at § III(11).[8]

Class Members (*i.e.*, those who do not opt of the Settlement) wanting to participate in the Settlement *need not do anything*. *See* Settlement at §§ I(27)-(28), ; see Proposed Notice, attached as Exhibit A to the Settlement Agreement. Individuals in the Settlement Class who do not want to participate in the Settlement may submit to the Settlement Claims Administrator a Request for Exclusion. Settlement, § III(15); Proposed Notice, pp. 4-5.

## 2.    **The Release**

Class Members will release Defendant and others "from any and all claims of any kind whatsoever, whether known or unknown, whether based on common law, regulations, statute, or a constitutional provision, under state, federal or local law, arising out of the allegations made in the Action and that reasonably arise, or could have arisen, out of the facts alleged in the Action as to the Class Members, including, but not limited to, claims arising from the procurement of a consumer report on them by any of the Released Parties, and any other claims for violations of the Fair Credit Reporting Act, 15 U.S.C. §1681b, *et seq.,* or related federal, state, and/or local laws whether willful, or otherwise, for declaratory relief, statutory damages, punitive

---

[5] See PGCAS, Section 1)(e).

[6] To ensure the Settlement Class and Class Counsel are adequately compensated, the Global Settlement Fund may be increased if data reflects the total number of consumer reports is more than 5% above 1,476 (or 1,550). Settlement at § III(7) ("To the extent the number of consumer reports obtained by Defendant during the Class Period increases by more than five (5%) percent beyond the original estimate of 1,476 (per section III, paragraph 4), as verified by the Settlement Administrator when data is sent to it in connection with administration of the Settlement after the Court grants approval, Defendant will have the option to increase the Global Settlement Fund proportionately"); Szamet Decl., ¶ 13.

[7] See PGCAS, Section 1)(h).

[8] See PGCAS, Section  8).

**MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

damages, costs, and attorneys' fees.  Notwithstanding the foregoing, nothing in the Settlement releases any claims that cannot be released as a matter of law." Settlement at §III(17).

The release is narrowed to the facts and claims arising out of the operative complaint.[9]  A settlement agreement may release claims that are "based on the identical factual predicate as that underlying the claims in the settled class action" even though the claims were "not presented and might not have been presentable in the class action" at the time.  *Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010).  Where a proposed release "track[s] the breadth of Plaintiff's allegations in the action and the settlement does not release unreleased claims that class members have against defendants," the identical factual predicate doctrine is satisfied and the release is appropriate.  *See Collins v. Cargill Meat Solutions Corp.*, 274 F.R.D. 294, 303 (E.D. Cal. 2011).

### 3.   The Settlement Mechanism and Administration

The Parties met and conferred regarding a third-party settlement administrator to administer the Settlement claims process (ILYM Group, Inc and JND Legal Administration). Szamet Decl., ¶14. Plaintiff obtained administration bids from several third-party settlement administrators. Id. ILYM submitted a bid for $17,895.90, while JND's bid was for $15,592.[10] Id.  Accordingly, the Parties agreed to use JND Legal Administration to administer the Settlement claims process. Szamet Decl., ¶ 14; Settlement at § (III)12.

The Settlement Administrator will send the Settlement Class a Notice explaining the terms and conditions of the Settlement. *Id.* at § III(14)(1). (A copy of the proposed Notice is attached the Settlement as Exhibit A). After the Notice is mailed, individuals in the Settlement Class will have 60 days[11] to object to, or opt

---

[9] See PGCAS, Section 1)(c).

[10] See PGCAS, Section 2).

[11] See PGCAS Section 9).

**MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

out of, the Settlement. *Id.* § III(15). The Settlement further provides it shall become effective only after the Court holds a final "fairness" hearing and finally approves the Settlement. *Id.* at § III(2); see also Notice at pp. 2 and 5-6. The proposed Notice advises the Settlement Class about the fairness hearing, their opportunity to attend and be heard. *Id.* At the fairness hearing, the Parties will be prepared to address any concerns raised by Class Members or the Court, and the Court will therefore have a second, more comprehensive opportunity to review and consider the Settlement, as well as any objections to the Settlement.

## IV.   THE LEGAL FRAMEWORK WEIGHS IN FAVOR OF GRANTING PRELIMINARY APPROVAL OF THE SETTLEMENT

Class actions are generally subject to a "strong judicial policy" favoring settlement. *Alberto v. GMRI, Inc.,* 252 F.R.D. 652, 658 (E.D. Cal. 2008) (citing *Class Plaintiffs v. City of Seattle,* 955 F.2d 1268, 1276 (9th Cir. 1992)). Under Rule 23 (e), class action settlements are subject to court approval.

Courts evaluate class action settlements in two stages. *Alberto,* 252 F.R.D. at 658. At the first stage, courts conditionally certify settlement classes, preliminarily approve settlements pending final fairness hearings, and authorize distribution of notices regarding proposed settlements. *Id.* (citations omitted). *See also Manual for Complex Litigation* § 21.632 (2004) (summarizing "preliminary fairness review"). The second stage involves a fairness hearing occurring well after notice is provided to the class, thus allowing time for putative class members to submit claims, objections, or requests to opt out. The court then decides if the proposed settlement should be approved as a fair, adequate, and reasonable resolution of the underlying dispute. *Id.* at 659 (citations omitted).

For the reasons set forth below, the Parties submit: (a) a settlement class should be conditionally certified; (b) the Settlement should be preliminarily approved as fair, reasonable, and adequate; and (c) the Notice should be distributed to the Settlement Class.

1

## 1.   __The Settlement Class Should be Certified__

To facilitate the Settlement, the Parties respectfully ask the Court to conditionally certify the following Settlement Class under FRCP 23 (e):

> all individuals who applied for employment with and/or were employed by Defendant in the United States and were the subject of a consumer report that was procured by Defendant or caused to be procured by Defendant through third-party consumer reporting agency First Contact HR during the Class Period (namely, October 30, 2013 to December 31, 2018).[12]

Settlement at §§ I(5) and (7). The Parties agree, but only for purposes of the Settlement, the criteria for certifying a settlement class are satisfied. *Settlement* at § II(1); Szamet Dec. ¶15.

a.   All Four FRCP 23(a) Criteria are Met.

***FRCP 23(a)(1): The class is so numerous that joinder of all members is impracticable.*** "As a general rule, classes numbering greater than forty individuals satisfy the numerosity requirement." *Quintero v. Mulberry Thai Silks, Inc.,* No. 08-2294, 28 I.E.R. Cas. (BNA) 607, 2008 U.S. Dist. LEXIS 84976, at *7 (N.D. Cal. Oct. 22, 2008) (citation omitted). Here, approximately 1,058 individuals comprise the Settlement Class. Szamet Decl., 17; Settlement at § II(4). Consequently, numerosity is easily satisfied.

***FRCP 23(a)(2): There are questions of law or fact common to the Class.*** The commonality requirement is liberally construed. *Alberto v. GMRI, Inc.,* 252

---

[12] Under the FCRA, claims must be filed within the earlier of (1) "2 years after the date of discovery by the plaintiff of the violation that is the basis" for the FCRA claim, or (2) "5 years after the date on which the violation that is the basis for such liability occurs," without respect to the plaintiff's knowledge of the violation. 15 U.S.C. §§1681p (1)-(2). A plaintiff discovers facts giving rise to a claim when he or she learns the defendant procured a background report after using an allegedly deficient disclosure form. *Wirt v. Bon-Ton Stores, Inc.,* 134 F. Supp.3d 852, 858–59 (M.D. Pa. 2015); *see also Milbourne v. JRK Residential Am., LLC,* No. 3:12CV861, 2016 WL 1071569, at *6 (E.D. Va. Mar. 15, 2016); *Moore v. Rite Aid Headquarters Corp.,* No. 13–1515, 2015 WL 3444227, at *8 (E.D. Pa May 29, 2015). Here, the Class Period is premised upon the broader 5-year statute of limitations.

F.R.D. at 660 (citation omitted); *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998) (concluding Rule 23(a)(2) is "permissively" construed). The class' claims must share substantial issues of law or fact, but need not be identical. *Quintero*, 2008 U.S. Dist. LEXIS 84976, at *8. Either "shared legal issues with divergent factual predicates" or "a common core of salient facts coupled with disparate legal remedies within the class" suffices. *Hanlon,* 150 F.3d at 1019.

Under the FCRA, an employer, or prospective employer, cannot "procure, or cause a consumer report to be procured, for employment purposes with respect to any consumer unless ... a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes." 15 U.S.C. § 1681b(b)(2)(A)(i). Here, the Settlement Class is all individuals who, between October 30, 2013 and December 31, 2018, in connection with their application for employment with Defendant, completed Defendant's standard form purporting to authorize a consumer report verifying their background and experience. Szamet Decl., ¶ 18. Based on these common factual and legal issues, the Parties submit sufficient commonality exists. Id.

**FRCP 23(a)(3): Plaintiffs claims are typical of the class' claims.** As with commonality, the typicality standard is "permissive[ly]" applied. *See Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003) (quoting *Hanlon*, 150 F.3d at 1020). More specifically, it is satisfied when a class representative's claim is "reasonably coextensive with those of absent class members; they need not be substantially identical." *Id.*

Plaintiff alleges that on or about August of 2015, he was required to sign a standardized form labeled "Applicant Notice and Consent," provided by First Contact HR, a company hired by Defendant to obtain a consumer reports verify employees' background and experience. Szamet Decl. 19. Plaintiff further alleges the

standardized form was not merely a disclosure; it included a liability release stating: "I release and hold harmless from all liability any individual or entity requesting or supplying information with respect to my application for employment." (ECF No. 1, ¶ 24.) According to Plaintiff, Defendant required all applicants to complete the same form that violated the FCRA's prohibition against including extraneous information in a required disclosure. (ECF No. 1, ¶ 25.) Although Defendant does not admit these allegations, for purposes of approving this Settlement, Defendant does not oppose Plaintiff's assertion sufficient typicality exists. Szamet Decl., ¶ 20.

   ***FRCP 23(a)(4): Plaintiff and Class Counsel will fairly and adequately protect the class' interests.*** Courts have interpreted this requirement as posing two questions: whether the class representative and her counsel (1) have conflicts of interest with putative class members, and (2) will vigorously prosecute the action on behalf of the class. *See id.* (citing *Hanlon* and other cases). Plaintiff and Class Counsel do not have interests antagonistic to those of the Settlement Class. Szamet Decl., ¶21. To the contrary, Plaintiff shares the same interest—*i.e.*, recovering damages resulting from alleged violations of Defendant's FCRA obligations. Id. Moreover, Class Counsel have extensive experience prosecuting similar such class actions. Szamet Dec. ¶¶ 34-35. Kingsley & Kingsley is experienced in prosecuting and defending employment and consumer matters, and the firm has focused its practice since 2000 on complex litigation including wage and hour and consumer class actions. (*Id.*) Kingsley & Kingsley currently serves as class counsel for dozens of pending class action lawsuits in Northern, Eastern, Central, and Southern California. (*Id.*) A list of representative cases that Kingsley & Kingsley has handled is included in the accompanying declaration of Kelsey M. Szamet. Thus, Plaintiff and Class Counsel are adequate representatives for the Class. The firm has diligently and aggressively pursued this action. After factoring in the risks discussed herein, Class Counsel believes that the proposed settlement is fair and reasonable.

///

b. The FRCP 23(b)(3) Criteria are Met.

To certify a class under FRCP 23(b)(3), a court must find (1) common questions of fact or law predominate over questions affecting individual members of the proposed class, and (2) a class action is a superior method for fairly and efficiently adjudicating the controversy. FRCP 23(b)(3). The Settlement easily meets these criteria.

***The predominance requirement is met***. Predominance "focuses on the relationship between the common and individual issues. When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.,* 244 F.3d 1152, 1162 (9th Cir), *cert. denied,* 534 U.S. 973,122 S. Ct. 395 (2001) ("Local Joint Executive Bd.") (quoting *Hanlon,* 150 F.3d at 1022).

Predominance is readily met because, as in numerous other class actions, Plaintiff's claim is premised in his allegation Defendant maintained a uniform policy of providing the Settlement Class with a standardized form facially violating the FCRA. (ECF No. 1, ¶¶ 24-25.) Plaintiff's claim is based on factual and legal questions about Defendant's policy that are not only common to the Settlement Class, but predominate under FRCP 23 (e). Szamet Decl. ¶ 23-24. These aspects of the case strongly support a finding that the predominance requirement is satisfied. Szamet Decl., ¶ 25. *See, e.g., In re Wells Fargo Home Mortgage Overtime Pay Litig.,* 527 F. Supp.2d 1053, 1068 (N.D. Cal. 2007); *In re Wells Fargo Home Mortg. Overtime Pay Litigation*, 571 F.3d 953, 958 (C.A.9 2009).

***Superiority is met.*** Whether a class action is a superior method of adjudicating a controversy involves a "comparative evaluation of alternative mechanisms of dispute resolution." *Hanlon,* 150 F.3d at 1023. The circumstances here are comparable with those involving the Las Vegas Sands' former casino employees

who sought damages for their employer's failure to provide a statutorily required 60-day notice before closure. When affirming the district court's approval of a class action settlement, the Ninth Circuit stated:

> This case involves multiple claims, some for relatively small individual sums. Counsel for the would-be class estimated that, under the most optimistic scenario, each class members would recover about $1,330. If plaintiffs cannot proceed as a class, some - perhaps most - will be unable to proceed as individuals because of the disparity between their litigation costs and what they hope to achieve.

*Local Joint Executive Bd.,* 244 F.3d at 1163 ("Class actions ... may permit the plaintiffs to pool claims which would be uneconomical to litigate individually.") (*citing Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809, (1985). In such a situation, superiority is "easily satisfied." *Id.* For purposes of approving the Settlement, the Parties submit superiority is equally satisfied. Szamet Decl., ¶ 26.

## 2. <u>The Proposed Settlement is Fair, Just and Adequate.</u>

Courts weigh several factors when determining if a settlement is fair, reasonable, and adequate under Fed. R. Civ. P. 23(e)(2). *Manual for Complex Litigation* § 21.62. The inquiry has been summarized as follows:

> Fairness calls for a comparative analysis of the treatment of class members vis-a-vis each other and vis-a-vis similar individuals with similar claims who are not in the class. Reasonableness depends on an analysis of the class allegations and claims and the responsiveness of the settlement to those claims. Adequacy of the settlement involves a comparison of the relief granted relative to what class members might have obtained without using the class action process.

*Id.,* § 21.62 at 315.

At the preliminary approval stage, courts do not make a final determination about fairness, reasonableness, and adequacy. Instead, the key question is whether the Settlement is "potentially fair, as the Court will make a final determination of [the settlement's] adequacy at the hearing on Final Approval, after such time as any

party has had a chance to object and/or opt out." *Acosta v. Equifax Info. Servs. LLC,* 243 F.R.D. 377, 386 (C.D. Cal. 2007). Thus, the inquiry is if the Settlement falls within the "range of possible approval" and appears to be sufficiently fair, reasonable, and adequate to warrant distributing notice to the Settlement Class informing them about the Settlement. *Molski v. Gleich,* 318 F.3d 937, 944 (9th Cir. 2003). *See also Manual for Complex Litigation* § 21.632. "Once the judge is satisfied as to the ... results of the initial inquiry into the [1] fairness, [2] reasonableness and [3] adequacy of the settlement," the court should direct notice to issue and schedule a final approval hearing. *Id.,* § 21.633 at 321.

a.     The Settlement is Fair.

**Fairness of distribution among Class Members.** The Settlement is fair because the basis for recovery is the same for each Class Member. Szamet Decl., ¶ 27. All individuals comprising the Settlement Class are eligible to receive individual payments from the Net Settlement Fund, and each Class member will be bound by the same release. Id.

**Fairness of proposed attorneys' fees and expenses.** The allocation of the Global Settlement Fund between Class Members and Class Counsel is also fair because Class Counsel may seek to recover no more than one-third of the Global Settlement Fund in fees. Szamet Decl., ¶ 28.

The requested fees are fair compensation for undertaking complex, risky, expensive, and time-consuming litigation solely on a contingency basis. Id. Furthermore, the fee request is in line with other attorneys' fees awards for similar actions, particularly when class members do not have to allege or prove they suffered injuries. Id.

In class actions, courts have approved attorneys' fee requests couched as a percentage of the "common funds" created by settlements. *Vincent v. Hughes Air West, Inc.*, 557 F.2d 759, 769 (9th Cir. 1977). The common fund approach "spread[s] litigation costs proportionally among all the beneficiaries so that the active

1    beneficiary does not bear the entire burden alone." *Id.*

2         Courts have long recognized that, when attorneys' efforts result in the creation

3    of a common fund that benefits the plaintiff and unnamed class members, counsel

4    have an equitable right to be compensated from that fund for their successful efforts

5    in creating it. *See, e.g.*, *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Staton*

6    *v. Boeing Co.*, 327 F.3d 938, 967 (9th Cir. 2003). "The common fund doctrine

7    provides that a private plaintiff, or his attorney, whose efforts create, discover,

8    increase or preserve a fund to which others also have a claim is entitled to recover

9    from the fund the costs of his litigation, including attorneys' fees." *Vincent v. Hughes*

10   *Air West, Inc.*, 557 F.2d 759, 769 (9th Cir. 1977); *see also In re Omnivision Tech.,*

11   *Inc.*, 559 F.Supp.2d 1036, 1046 (N.D. Cal. 2008). This doctrine rests on the

12   understanding that attorneys should normally be paid by their clients, and that unless

13   attorneys' fees are paid out of the common fund, those who benefitted from the fund

14   would be unjustly enriched. *Boeing*, 444 U.S. at 478. To prevent this unfair result,

15   courts exercise their inherent equitable powers to assess attorneys' fees against the

16   entire fund, thereby spreading the cost of those fees among all those who benefitted.

17   *Id.*

18        Moreover, when deciding fee awards, several courts have expressed

19   frustration with an alternative "lodestar" approach, which usually involves wading

20   through voluminous and often indecipherable time records. Commenting on the

21   lodestar approach, in *In re Activision Securities Litigation,* 723 F. Supp. 1373, 1375

22   (N.D. Cal. 1989), Chief Judge Marilyn Hall Patel wrote:

23            This court is compelled to ask, "Is this process necessary?"
             Under a cost-benefit analysis, the answer would be a resounding,
24           "No!" Not only does the [lodestar] analysis consume an undue
             amount of court time with little resulting advantage to anyone,
25           but in fact, it may be in the detriment of the class members. They
             are forced to wait until the court has done a thorough,
26           conscientious analysis of the attorneys' fees petition. Or, class
             members may suffer a further diminution of their fund when a
27           special master is retained and paid from the fund. Most
28

important, however, is the effect the process has on the litigation and the timing of settlement. Where attorneys must depend on a lodestar approach, there is little incentive to arrive at an early settlement.

The common fund approach is preferable to the lodestar because it: (1) aligns the interests of class counsel and absent class members; (2) encourages efficient resolution of the litigation by providing an incentive for early, yet reasonable, settlement; and (3) reduces the demands on judicial resources. *In re Activision Securities Litigation*, 723 F. Supp. at 1378-79. Accordingly, courts routinely use the common fund approach when determining fee awards accompany class action settlements (*See, e.g., In re Pacific Enterprises Securities Litigation*, 47 F.3d 373, 37879 (9th Cir. 1994) (approving attorneys' fees of 33 1/3% of settlement fund).

According to *Newberg on Class Action* § 14:6 (4th ed. 2008): "No general rule can be articulated on what is a reasonable percentage of a common fund. Usually 50% of the fund is the upper limit on a reasonable fee award from a common fund in order to assure that the fees do not consume a disproportionate part of the recovery obtained for the class, although somewhat larger percentages are not unprecedented." Historically, courts have awarded fees ranging between 20% and 50% of the common fund. *Id. See also In re Activision Securities Litigation*, 723 F. Supp. 1373, 1378 (N.D. Cal. 1989). Class Counsel's application for one-third of the Global Settlement Fund is thus within the range of reasonableness and fair.

The typical range of acceptable attorneys' fees in the Ninth Circuit is up to 33.33% of the total settlement value *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (1998); *Staton*, 327 F.3d at 952. However, the exact percentage varies depending on the facts of the case, and in "most common fund cases, the award exceeds that benchmark." *Knight v. Red Door Salons, Inc.*, 2009 WL 248367 (N.D. Cal. 2009).

Class Counsel requests a fee award in the amount of $41,967.33, which represents 33% of the $125,902.00 common fund. Szamet Decl., ¶ 29. Class

**MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

Counsel's application for an award of attorneys' fees is reasonable and fair. Id.  This litigation resulted in the creation of a common fund for the Class, namely a non-reversionary settlement fund of $125,902.00. Id. Because no Class Members will pay fees to Class Counsel for their efforts during the litigation, equity requires them to pay a fair and reasonable fee based on what the market would traditionally require, no less than if they had hired private counsel to litigate their cases individually. Id. Class Counsel is therefore entitled to fees from the settlement fund as a whole. Id.

A lodestar cross-check also confirms that the percentage requested is reasonable. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 1050 (9th Cir. 2002) ("while the primary basis of the fee award remains the percentage method, the lodestar may provide a perspective on the reasonableness of a given percentage award"). Szamet Decl., ¶ 30.

Class Counsel's attorneys' fees in the present case are broken down as follows:

|  | **HOURS** | **HOURLY RATE** | **TOTALS** |
|---|---|---|---|
| Eric B. Kingsley | 6.3 | $725.00 | $4,725.00 |
| Liane Katzenstein Ly | 1.1 | $500.00 | $550.00 |
| Kelsey M. Szamet | 35.4 | $500.00 | $17,700.00 |
| Justin M. Aufderhar | 44.1 | $325 | $14,332.50 |
| **TOTAL** | 86.9 | | $37,307.50 |

Szamet Decl., ¶ 31.

Here, Class Counsel has already spent over 86.9 hours on this litigation, resulting in lodestar fees through the present of $37,307.50. Szamet Decl., ¶ 32. Note that rates are provided at the current hourly rate, which is appropriate as a means of compensating for delay in payment. (*Missouri v. Jenkins by Agyei* (1989) 491 U.S. 274, 283-84; *In re Washington Public Power Supply System Securities Litigation* (9th Cir. 1994) 19 F.3d 1291, 1305.) Id.

///

Using the above lodestar, the percentage of the fund requested represents a multiplier of approximately **1.12**, which is well within the range of reasonable multipliers approved by courts within the Ninth Circuit. *Vizcaino v. Microsoft Corp.* (9th Cir. 2002) 290 F.3d 1043, 1051 (quoting *In re Prudential Ins. Co. America Sales Practice Litigation Agent Actions* (3d Cir. 1998) 148 F.3d 283, 341) (holding that multipliers "ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied"); Szamet Decl., ¶ 33. Comparison with the lodestar thus demonstrates that the requested fee award of **$41,967.33** is reasonable. Id.

Finally, Kingsley & Kingsley is experienced in prosecuting employment and consumer litigation, and the firm has focused its practice since the year 2000 on wage, hour, and working condition violations. Szamet Decl., ¶ 34.  They are well-versed in class action litigation and has diligently and aggressively pursued this action.  Kingsley & Kingsley currently serves as class counsel for dozens of pending class action lawsuits in Northern, Central, and Southern California. Id. Throughout the past decade, attorneys at Kingsley & Kingsley have also actively litigated countless wage and hour and consumer class actions.  Below is a representative sampling of those cases[13]:

     a.    *Ryan v. Hilton Hotels Corporation,* Los Angeles County Superior Court (BC364260).  The matter was approved for final settlement by the Honorable Mary Thornton House in March 2008, in the gross amount of $1,675,000.00, with attorneys' fees request of 33 1/3%.

     b.    *Benitez v. GRA-GAR LLC,* San Bernardino County Superior Court (CIVSS709965).  The matter was approved for final settlement by the Honorable W. Robert Fawke in February 2009, in the gross amount of $250,000.00, with attorneys' fees request of 33 1/3%.

     c.    *Rollins v. Big Wangs, Inc.,* Los Angeles County Superior Court

---

[13] See PGCAS, Section 11).

**MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

(BC393775). The matter was approved for final settlement by the Honorable Malcolm H. Mackey in October 2009, in the gross amount of $195,000.00, with attorneys' fees request of 33 1/3%.

d. *Sevier v. Excalibur Well Service,* Kern County Superior (S-1500-CV-265391-WDP). Preliminary approval of settlement granted March 10, 2010 by Honorable William D. Palmer. The matter was approved for final settlement in May 2010, in the gross amount of $550,000.00, with attorneys' fees request of 33 1/3%.

e. *Lewis v. Collabrus, Inc., et al.*, Santa Clara County Superior Court (109CV-142927). The matter was approved for final settlement by the Honorable James P. Kleinberg in March 2012, in the gross amount of $2,000,000.00, with attorneys' fees request of 33.3%.

f. *Hirschinger v. Blue Cross of California*, Los Angeles Superior Court (BC402739). The matter was approved for final settlement by the Honorable Lee Smally Edmund in June 2013, in the gross amount of $4,700,000.00, with attorney's fees request of 38%.

g. *Perry v. GSF Properties*, Fresno County Superior Court (11CECG02434MWS). The matter was approved for final settlement by the Honorable Mark W. Snauffer in October 2013, in the gross amount of $700,000.00, with attorney's fees request of 33.33%.

h. *Anderson v. Total Renal Care, Inc.*, Los Angeles County Superior Court (BC388335). The matter was finally approved for final settlement by the Honorable William F. Highberger in January 2014, in the gross amount of $1,500,000, with attorney's fees request of 33.33%.

i. *Randell v. Tuesday Morning, Inc.*, Los Angeles Superior Court (BC403298), The matter was finally approved for final settlement by the Honorable Richard E. Rico in October 2014, in the gross amount of $899,000.00, with attorney's fees request of 33.33%.

j. *Westbrook v. International Surfacing SysteMr*, Alameda

17

**MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

Superior Court (RG10510015) This certified class action was approved for final settlement by the Hon. Wynne Carvill in August 2015, in the gross amount of $995,000.00, with attorney's fees request of 33.33%. Szamet Decl., ¶ 34.

A representative sampling of recent class action and wage and hour cases successfully certified by Kingsley & Kingsley while serving as Lead and/or Class Counsel follows:

a.   *Munoz, et al. v. Guimarra Vineyards Corporation*, Eastern District (1:09-cv-00703 AWI-JLT). The Hon. Jennifer Thurston granted the plaintiffs' class certification motion and appointed Kingsley & Kingsley as class counsel.

b.   *Melendrez v. JK Communications*¸ Los Angeles Superior Court (BC497692). The Hon. John Hepard Wiley, Jr. certified five classes and appointed Kingsley & Kingsley as class counsel.

c.   *Budrow v. Dave & Buster's of California, Inc.*, Los Angeles County Superior Court (BC349060) approved for Class Certification.

d.   *Suarez v. Mazatlan, Inc.*, San Diego County Superior Court (37-2015-00002978-CU-OE-CTL) approved for Class Certification. Szamet Decl., ¶ 35

For these reasons, Class Counsel requests the Court grant the requested fee award of $41,967.33.

**The proposed Service Award is fair** [14]. Fairness principles favor a $5,000 Service Award for Plaintiff, who prosecuted this action and assisted Class Counsel throughout the litigation of this matter. Szamet Decl., ¶36.   Mr. Taafua's time includes researching and identifying competent counsel with relevant expertise, providing information to Class Counsel regarding the claims at issue, compiling documents, conducting several meetings and telephone conferences with his attorneys to discuss the status of the case and the theories of liability, and reviewing all relevant case documents. Id. *League of Martin v. City of Milwaukee*, 588 F. Supp.

---

[14] See PGCAS Section 7).

**MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

1004, 1024 (E.D. Wis. 1984), (concluding it is "not uncommon for class ... members to receive special treatment in settlement" when they have been instrumental in prosecuting the lawsuit). Moreover, Plaintiff incurred personal risk by bringing the Lawsuit; he could have been responsible for Defendant's costs, and his potential employment opportunities may have been impacted by his public prosecution of the Lawsuit. Szamet Decl., ¶ 37; *See, e.g., Koehl v. Verio,* 142 Cal. App. 4th 1313, 1328 (2006) (where defendant prevailed at trial, named plaintiffs were found to jointly and severally liable for defendant's attorneys' fees). For these reasons, the Service Award is fair.

b.     The Settlement is Reasonable.

There is risk associated with continued litigation, including the prospect that a class might not be certified, or a certified class may be significantly smaller than proposed. Szamet Decl., ¶ 38. In the Lawsuit, of particular importance to determining the reasonableness of the Settlement are the significant liability questions regarding purported violations of the FRCA.

Defendant likely would have advanced an argument that Plaintiff lacked standing because he did not suffer, or allege, a concrete injury under the Supreme Court's *Spokeo* decision.[15] Szamet Decl., ¶ 39. Furthermore, Defendant would have proffered evidence showing the allegedly non-compliant disclosure was followed by a compliant disclosure administered to the putative class. Id.; *See*, e.g. *Marchioli v. Pre-Employ.com, Inc*., Case No. 16-2305, 2017 U.S. Dist. LEXIS 217648, at *31-32 (C.D. Cal. June 30, 2017) (plaintiff could not plausibly allege an "informational injury" because she received additional disclosures and notices revealing the employer intended to conduct a background check).  Defendant also likely would have advanced an argument that Plaintiff's claims were time-barred because he allegedly knew or should have known that a background check was

---

[15] *Spokeo, Inc. v. Robins*, 578 U.S. ---, 136 S.Ct. 1540, 1549-50 (2016) (concluding standing requires "an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical")(internal quotations omitted).

**MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

conducted at the time he applied for employment with Defendant, yet did not bring this case until more than three years after Defendant hired him.  Szamet Decl., ¶ 39.  *See, e.g.*, *Banga v. Equifax Info. Servs., LLC*, 473 Fed. App'x 712, 713 (9th Cir. 2012) ("The district court properly granted summary judgment [on the FCRA claims] on statute of limitations grounds because Banga failed to file her action within two years of when she knew or should have known that defendant disclosed her credit report to third parties for promotional or other improper purposes."). Because of the uncertainty regarding FCRA liability, the $125,902.00 Global Settlement Fund is more than reasonable. Szamet Decl., ¶ 40.

Risks and uncertainties are also present regarding damages. In particular, Plaintiff seeks statutory damages under the FCRA ranging between $100 and $1,000 per violation. Szamet Decl., ¶ 41. Defendant would have certainly argued the alleged violations were technical, and thus did not result in any injuries or damages. Id. For example, in *Hillson v. Kelly Services*, E.D. Mich. No. 2:15cv10803, 2017 WL 279814, at *7-8 (E.D. Mich. Jan. 23, 2017), the court preliminarily approved a settlement awarding $19 to each class member[16] for an alleged FCRA standalone disclosure violation. In *Hillson*, the court assumed each individual class member would recover $100 at trial, and observed, "once the $100 award is discounted by the likelihood of success at trial (which is conceivably in the ballpark of 19%), the amount of recovery under the settlement appears reasonable." *Id*. at *7.

Here, the proposed Global Settlement Fund represents **85%** of Plaintiff's recovery at trial (1,476 reports x $100),[17] with an average gross settlement amount of $119 to each proposed class member. Szamet Dec.  ¶42. Thus, the proposed settlement falls well above the approved discounted range for similar class settlements. Id.

---

[16] In *Hillson*, there were two subclasses; members of the subclasses received settlement payments of $41 and $14, respectively, for an average of $19 (based on the number of individuals in each subclass).

[17] See PGCAS, Section 1)(e).

**MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

Furthermore, while Class Counsel believe Plaintiff's claims are meritorious, they are experienced class action litigators, and understand the outcome of class certification, trial, and any attendant appeals are inherently uncertain, as well as likely to consume many months or years. Szamet Dec. ¶43. Thus, an important factor courts consider when approving a class action settlement is the complexity, expense, and likely duration of the litigation. *Offices for Justice v. Civil Service Com'n,* 688 F.2d 615, 625 (9th Cir. 1982). More specifically, courts weigh the benefits of a proposed settlement against the expense and delay involved in achieving an equivalent, or more favorable, result at trial. *See, e.g., Young v. Katz,* 447 F.2d 431,433-34 (5th Cir. 1971). *See also* FRCP 1 (requiring a just, speedy, and inexpensive resolution of every action).

The "overriding public interest in settling and quieting litigation" is "particularly true in class action suits." *See Van Bronkhorst v. Safeco Corp.,* 529 F.2d 943, 950 (9th Cir. 1976) (footnote omitted); *see also 4 Newberg on Class Actions* § 11.41 (citing cases). This public policy favoring class action settlements applies with particular force here because the Settlement provides Class Members substantial, prompt, and efficient relief.

c.   The Settlement is Adequate.

The adequacy of a class action settlement must be judged as "a yielding of absolutes and an abandoning of highest hopes ... . Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation." *Officers for Justice,* 688 F.2d at 634 (citation omitted). The Settlement is not to be judged against a speculative measure of what may have been achieved. *Linney v. Cellular Alaska P'ship,* 151 F.3d 1234, 1242 (9th Cir. 1998). Moreover, determining the adequacy of the Settlement "involves a comparison of the relief granted relative to what class members might have obtained without using the class action process." *Manual for Complex Litigation* § 21.62. An additional

**MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

consideration is that the Settlement provides for payment to now, rather than a payment many years down the road, if ever. *See City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 463 (2d Cir. 1974).

Judged against these standards, the Settlement is more than adequate. The present value of the Settlement far exceeds what the Settlement Class would have likely received if the underlying claims were fully litigated. Szamet Decl. ¶ 44. Likewise, there was a high probability of drawn out litigation and risks the Settlement Class may not have prevailed. Id. For all of these reasons, the Court should preliminarily approve the Settlement.

### 3.   The Notice Adequately Informs Class Members of the Settlement and Their Rights Thereunder.

A copy of the Parties' proposed class notice is attached to the Settlement as Exhibit A.[18]  The Notice explains the claims in the Lawsuit, the essential terms of the settlement, that class members need to do nothing to recover under the Settlement, the procedures for requests to be excluded from the Settlement, and how to object to the Settlement. Szamet Dec. ¶ 45. The Notice also advises the Settlement Class about the fairness hearing, Class Members' rights with respect to that hearing, and how to get more information about the Settlement. Id.

The time period for submitting an opt out request from the Settlement is reasonable, as is the time for filing objections[19]; the Settlement Class will have adequate time to (1) digest the information provided in the Notice, and (2) obtain answers to questions about the Settlement. Id.

Accordingly, Plaintiff respectfully asks the Court to approve the proposed Notice and authorize the Settlement Administrator to send to the Settlement Class

---

[18] See PGCAS, Section 3).

[19] *See* PGCAS, Section 5).

**MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

the proposed Notice.[20]

## V.   **LOCAL PROCEDURAL GUIDANCE FOR CLASS ACTION SETTLEMENTS, PRELIMINARY APPROVAL**

The following is intended the address the remaining Sections under the PGCAS, not discussed above:

**1)(b) and (d):** These sections are inapplicable as this matter has not been certified as a class action under F.R.C.P. Rule 23.

**1)(g):** This section is inapplicable because this is a checks-mailed settlement. Class Members do not need to submit a claim form to receive payment or participate in the proposed settlement class.

**12):** Plaintiff will concurrently e-mail the Proposed Order Granting Preliminary Approval of the Class Action Settlement, in MS Word format, to the Court's PO e-mail address.

## VI.   **CONCLUSION**

For the reasons set forth above, the Parties respectfully ask the Court the Court to preliminarily approve the Settlement and Notice and authorize the Settlement Administrator to send to the Settlement Class the proposed Notice.

DATED: July 19, 2019                    KINGSLEY & KINGSLEY, APC


                                        By: /s/ Kelsey M. Szamet
                                            Kelsey M. Szamet

                                        Attorney for Plaintiff
                                        Paniani Taafua and the Proposed Class

---

[20] Within ten (10) days of Plaintiff filing his motion for preliminary approval, Defendant will provide notice of the proposed class action settlement under the Class Action Fairness Act ("CAFA") to the appropriate state and federal officials in accordance with 28 U.S.C. § 1715.

**MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**