**KINGSLEY & KINGSLEY, APC**
ERIC B. KINGSLEY, Esq., Cal. Bar No. 185123
eric@kingsleykingsley.com
KELSEY M. SZAMET, Esq., Cal. Bar No. 260264
kelsey@kingsleykingsley.com
16133 Ventura Blvd., Suite 1200
Encino, CA 91436
Telephone: (818) 990-8300
Fax: (818) 990-2903

**DAVTYAN LAW FIRM, INC.**
EMIL DAVTYAN, Esq. SBN-299363
support@davtyanlaw.com
880 E. Broadway
Glendale, CA 91205
(818) 875-2008, Fax (818) 722-3974

Attorneys for Plaintiff and the Proposed Class

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PANIANI TAAFUA, an individual, on behalf of himself and others similarly situated<br><br>PLAINTIFF,<br><br>v.<br><br>QUANTUM GLOBAL TECHNOLOGIES, LLC; and DOES 1 thru 50, inclusive,<br><br>DEFENDANTS. | CASE NO.  5:18-cv-06602-VKD<br><br>[Case Assigned for All Purposes to Hon. Judge Virginia K. DeMarchi]<br><br>**PLAINTIFF'S RENEWED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date:     May 26, 2020<br>Time:    10:00 a.m.<br>Dept.:    Courtroom 2, 5th Floor |

# **TABLE OF CONTENTS**

I.    INTRODUCTION .................................................1

II.   PROCEDURAL HISTORY AND FACTUAL BACKGROUND.................2

III.  SUMMARY OF THE SETTLEMENT'S KEY PROVISIONS ....................4

    1.    Monetary Recovery ...................................................4

    2.    The Release .................................................7

    3.    The Settlement Mechanism and Administration...................................7

IV.   THE LEGAL FRAMEWORK WEIGHS IN FAVOR OF
      GRANTING PRELIMINARY APPROVAL OF THE SETTLEMENT........8

    1.    The Settlement Class Should be Certified ............................................9

        a.    All Four FRCP 23(a) Criteria are Met. ...................................10

        b.    The FRCP 23(b)(3) Criteria are Met...........................................15

    2.    The Proposed Settlement is Fair, Just and Adequate. .........................17

        a.    The Settlement is Fair. ..............................................18

        b.    The Settlement is Reasonable. .................................................27

        c.    The Settlement is Adequate. .....................................29

    3.    The Notice Adequately Informs Class Members of the Settlement
      and Their Rights Thereunder...............................................30

V.    LOCAL PROCEDURAL GUIDANCE FOR CLASS ACTION
      SETTLEMENTS, PRELIMINARY APPROVAL........................................32

VI.   CONCLUSION.................................................33

# <u>TABLE OF AUTHORITIES</u>

**PAGE(S)**

**FEDERAL CASES**

*Acosta v. Equifax Info. Servs. LLC,*
  243 F.R.D. 377 (C.D. Cal. 2007)......................................................................18

*Alberto v. GMRI, Inc.,*
  252 F.R.D. 652 (E.D. Cal. 2008)............................................................. 8, 9, 10

*Banga v. Equifax Info. Servs., LLC,*
  473 Fed. App'x 712 (9th Cir. 2012)............................................................. 27, 28

*Boeing Co. v. Van Gemert,*
  444 U.S. 472 (1980) ...............................................................................19

*City of Detroit v. Grinnell Corp.,*
  495 F.2d 448 (2d Cir. 1974) ............................................................. 29, 30, 31

*Class Plaintiffs v. City of Seattle,*
  955 F.2d 1268 (9th Cir. 1992) ..................................................................8

*Collins v. Cargill Meat Solutions Corp.,*
  274 F.R.D. 294 (E.D. Cal. 2011)...............................................................7, 8

*Corcoran v. CVS Health,*
  2019 WL 6250972 (N.D. Cal. Nov. 22, 2019).................................................13

*Frieri v. Sysco Corp.,*
  2019 WL 6467599 (S.D. Cal. Dec. 2, 2019).....................................................31

*Hanlon v. Chrysler Corp.,*
  150 F.3d 1011 (9th Cir. 1998) ......................................................... passim

*Hesse v. Sprint Corp.,*
  598 F.3d 581 (9th Cir. 2010).....................................................................7

*Hillson v. Kelly Services,*
  E.D. Mich. No. 2:15cv10803, 2017 WL 279814 (E.D. Mich. Jan. 23, 2017) .....28

**RENEWED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

*League of Martin v. City of Milwaukee,*

    588 F. Supp. 1004 (E.D. Wis. 1984) ................................................................26

*In re Activision Securities Litigation,*

    723 F. Supp. 1373 (N.D. Cal. 1989)........................................................ 20, 21

*In re Omnivision Tech., Inc.,*

    559 F.Supp.2d 1036 (N.D. Cal. 2008)..........................................................19

*In re Pacific Enterprises Securities Litigation,*

    47 F.3d 373 ........................................................................................... 20, 21

*In re Prudential Ins. Co. America Sales Practice Litigation Agent Actions,*

    (3d Cir. 1998) 148 F.3d 283 ..................................................... 22, 23, 25

*In re Washington Public Power Supply System Securities Litigation,*

    (9th Cir. 1994) 19 F.3d 1291 ........................................................................22

*In re Wells Fargo Home Mortg. Overtime Pay Litigation,*

    571 F.3d 953 (C.A.9 2009)............................................................................16

*In re Wells Fargo Home Mortgage Overtime Pay Litig.,*

    527 F. Supp.2d 1053 (N.D. Cal. 2007)..........................................................16

*Knight v. Red Door Salons, Inc.,*

    2009 WL 248367 (N.D. Cal. 2009)................................................................21

*Linney v. Cellular Alaska P'ship,*

    151 F.3d 1234 (9th Cir. 1998).......................................................................29

*Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands,*

    *Inc.,*

    244 F.3d 1152 (9th Cir) ....................................................................... 16, 17

*Milbourne v. JRK Residential Am., LLC,*

    No. 3:12CV861, 2016 WL 1071569 (E.D. Va. Mar. 15, 2016)............................9

*Missouri v. Jenkins by Agyei,*

    (1989) 491 U.S. 274 .......................................................................................22

*Molski v. Gleich,*

**RENEWED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION
SETTLEMENT**

318 F.3d 937 (9th Cir. 2003) ......................................................... 18, 19

*Moore v. Rite Aid Headquarters Corp.*,

No. 13–1515, 2015 WL 3444227 (E.D. Pa May 29, 2015) ...................................9

*Offices for Justice v. Civil Service Com'n,*

688 F.2d 615 (9th Cir. 1982) ...................................................................29

*Phillips Petroleum Co. v. Shutts,*

472 U.S. 797, (1985) .........................................................................17

*Powers v. Eichen,*

229 F.3d 1249 (9th Cir. 2000) ...............................................................21

*Quezada v. Loan Center of Cal., Inc.,*

2009 WL 5113506 (E.D. Cal. Dec. 18, 2009) ...............................................13

*Quintero v. Mulberry Thai Silks, Inc.,*

No. 08-2294, 28 I.E.R. Cas. (BNA) 607, 2008 U.S. Dist. LEXIS 84976, at *7

(N.D. Cal. Oct. 22, 2008) ....................................................................10

*Roes 1-2 v. SFBSC Management, LLC,*

944 F.3d 1035 (9th Cir. 2019) ............................................................ 31, 32

*Schofield v. Delta Air Lines, Inc.,*

2019 WL 955288 (N.D. Cal. Feb. 27, 2019) ............................................. 13, 31

*Spokeo, Inc. v. Robins,*

578 U.S. ---, 136 S.Ct. 1540 (2016) .........................................................27

*Staton v. Boeing Co.,*

327 F.3d 938 (9th Cir. 2003) ......................................................... 11, 19, 21

*Syed v. M-I, LLC,*

853 F.3d 492 (9th Cir. 2017) ......................................................... 1, 2, 12

*Tinoco v. Hajoca Corp.,*

2019 WL 4239130 (C.D. Cal. June 18, 2019) ...............................................31

*Van Bronkhorst v. Safeco Corp.,*

529 F.2d 943 (9th Cir. 1976) ................................................................29

**RENEWED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

*Vincent v. Hughes Air West, Inc.*,

   557 F.2d 759 (9th Cir. 1977) ...................................................................19

*Vizcaino v. Microsoft Corp.*,

   290 F.3d 1043  (9th Cir. 2002) ...................................................... 21, 22

*Vizzi v. Mitsubishi Motors North America, Inc.*,

   No. SACV 08-00650-JVS (RNBx), 2010 WL 11515266 (C.D. Cal. Feb. 22,
   2010) ...................................................................................... 13, 14

*Wirt v. Bon-Ton Stores, Inc.*,

   134 F. Supp.3d 852 (M.D. Pa. 2015) .........................................................9

*Wright v. Renzenberger*,

   2019 WL 8163480 (C.D. Cal. Nov. 25, 2019) .....................................31

*Young v. Katz,*

   447 F.2d 431 (5th Cir. 1971) ...................................................................29

**STATE CASES**

*Hackethal v. Nat'l Casualty Co.*,

   189 Cal.App.3d 1102 (1987) ........................................................ 14, 15

*Koehl v. Verio*,

   142 Cal. App. 4th 1313 (2006) .................................................................27

**FEDERAL STATUTES**

15 U.S.C. §1681b ......................................................................................7

15 U.S.C. §1681b(b)(2)(A)(i) .................................................................2

15 U.S.C. §1681b(b)(2)(A)(ii) ................................................................2

15 U.S.C. § 1681 ......................................................................................1

15 U.S.C. § 1681b(b)(2)(A)(i) ..............................................................10

15 U.S.C. §§1681p(1)-(2) .........................................................................9

28 U.S.C. § 1715 .....................................................................................32

**FEDERAL RULES**

Federal Rules of Civil Procedure 1 ........................................................29

**RENEWED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

Federal Rules of Civil Procedure 23 ..........................................................32

Federal Rules of Civil Procedure 23 (e) ................................................ 9, 16

Federal Rules of Civil Procedure 23(a) ....................................................10

Federal Rules of Civil Procedure 23(a)(1)................................................10

Federal Rules of Civil Procedure 23(a)(2)................................................10

Federal Rules of Civil Procedure 23(a)(3)................................................11

Federal Rules of Civil Procedure 23(a)(4)................................................14

Federal Rules of Civil Procedure 23(b)(3) ...............................................15

Federal Rules of Civil Procedure 23(e)(2)................................................17

**OTHER AUTHORITIES**

4 Newberg on Class Action*s* § 11.41 ......................................................29

Manual for Complex Litigation § 21.62 ............................................. 17, 29

Manual for Complex Litigation § 21.632 ..................................................18

Manual for Complex Litigation § 21.632 (2004) ........................................9

*Quintero v. MulberryThai Silk,*

   2008 U.S. Dist. LEXIS 84976, at *8 ..................................................10

**RENEWED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION
SETTLEMENT**

# I.   __INTRODUCTION__

Plaintiff PANIANI TAAFUA, an individual ("Plaintiff"), on behalf of himself, and on behalf of all persons similarly situated, through his attorneys of record ("Class Counsel"), submits this Renewed Motion for Preliminary Approval of Class Action Settlement regarding the allegations in Plaintiff's Complaint (the "Lawsuit"), which asserts claims under the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq*. (the "FCRA"). Plaintiff and Defendant QUANTUM GLOBAL TECHNOLOGIES, LLC ("Defendant" OR "QGT") (collectively with Plaintiff, the "Parties"), reached an agreement to settle the Lawsuit. Under Federal Rules of Civil Rule (FRCP"), Rule 23(e), Plaintiff asks this Court for its preliminary approval of the Parties' "Amended Class Action Release and Settlement Agreement" ("Amended Settlement" or "Amended Settlement Agreement"), which is concurrently submitted as Exhibit 1 to the Declaration of Kelsey M. Szamet ("Szamet Decl.").

Plaintiff believes that the Amended Settlement addresses the concerns that the Court identified in its Order Denying Motion for Preliminary Approval of Class Action Settlement (Dkt. 41)("Order").  The total settlement amount has increased from $125,902 to $174,980, which is expected to result in a net settlement amount of $111,312.67.  The majority of the net settlement amount will be apportioned to claims for which Defendant lacks a potential statute of limitations defense and will result in approximately $124.64 per consumer report for claims arising since October 30, 2016.  As the chart attached to this Motion reflects, the net recovery per consumer report is the second highest among eight other similar FCRA class settlements that counsel has been able to locate since *Syed v. M-I, LLC*, 853 F.3d 492 (9th Cir. 2017) and substantially higher than the majority of these other settlements.  (See Exhibit "A" hereto.)

With respect to the issues of typicality, adequacy, and predominance, Plaintiff believes he has sufficiently alleged a class theory of recovery that addresses the

1

1   Court's concerns in the Order.  Plaintiff has pled that he and other class members
2   received a similar background check disclosure that impermissibly contained a
3   liability waiver that distracted and confused Plaintiff and other class members about
4   the purpose and import of the disclosure.  Because of the liability waiver, Plaintiff
5   contends that he and other class members were unaware that Defendant was
6   procuring or that they were authorizing Defendant to procure a consumer report.[1]
7   Plaintiff therefore contends that all settlement class members' claims are timely pled
8   and this is an issue that can be determined on a class basis.

9   **II.   PROCEDURAL HISTORY AND FACTUAL BACKGROUND**

10          On October 30, 2018, Plaintiff filed his Complaint in the United States District
11  Court for the Northern District of California, alleging two causes of action as
12  putative class actions under the FCRA. (Dkt No. 1 ("Complaint"); and Declaration
13  of Kelsey M. Szamet ¶4 ("Szamet Decl.")  More specifically, Plaintiff alleges that
14  Defendant violated the FCRA by improperly including a liability waiver in its
15  disclosure form.  Id. Specifically, Plaintiff contends that during the relevant period,
16  Defendant has had a consistent policy of requiring Plaintiff and all members of the
17  Proposed Class[2] to execute an "Application Notice and Consent Document" form
18  ("authorization and disclosure form") permitting First Contact HR to obtain a
19  consumer report verifying the applicants' background and experience.   (See
20  authorization and disclosure form attached as Exhibit "2" to Szamet Decl.)  Plaintiff
21  contends that by including a liability release in its authorization and disclosure form,
22  Defendant violated 15 U.S.C. §1681b(b)(2)(A)(i)-(ii).

23  ----

24  [1]  Plaintiff alleges that he did discover that Defendant procured a consumer report
     on him until he reviewed his personnel file in 2018 and accordingly that the
25   statute of limitations did not begin running until then (thereby rendering his claim
     timely pled).  ECF 40, p. 3.
26  [2]  "Class" or "Class Members" means all individuals who applied for employment
     with and/or were employed by Defendant in the United States and were the
27   subject of a consumer report that was procured by Defendant or caused to be
     procured by Defendant through third-party consumer reporting agency First
28   Contact HR during the Class Period.

**RENEWED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION
SETTLEMENT**

///

The Parties engaged in extensive discussions about their respective positions and the information and data needed to properly evaluate the merits of the claims alleged. Szamet Decl. ¶5. The Parties reached a proposed class action settlement on May 8, 2019 through arms-length direct negotiations.  Szamet Decl. ¶6.  Plaintiff filed his motion for preliminary approval on July 19, 2019.  (Dkt. No. 34).

On August 27, 2019, the Court held a hearing on Plaintiff's Motion for Preliminary Approval of Class Action Settlement.  Thereafter, the Court issued an Order for Supplemental Briefing re Plaintiff's Motion. (Dkt. No. 38).  On September 16, 2019, Plaintiff filed his Supplemental Brief in support of his Motion for Preliminary Approval. (Dkt. No. 40).  On January 8, 2020, the Court issued an Order Denying Motion for Preliminary Approval.  (Dkt. No. 41)("Order").

Thereafter, the Parties meaningfully met and conferred and amended the terms of the proposed settlement in an attempt to address the Court's concerns set forth in the Order.  Plaintiff now presents the Amended Settlement Agreement to the Court seeking preliminary approval.

The operative complaint identified a class defined as:

> all persons in the United States who signed a background check form as administrated by First Contact HR that included an authorization and a liability release clause at any time during the period beginning five (5) years prior to the filing of this Complaint and ending on the date as determined by the Court

Dkt. 1, ¶ 5.

The Settlement Class, which includes approximately 1,041 individuals, is defined as:

> all individuals who applied for employment with and/or were employed by Defendant in the United States and were the subject of a consumer report that was procured by Defendant or caused to be procured by Defendant through third-party consumer reporting agency First Contact HR during the Class Period.

3

*See* Szamet Decl. Exhibit 1, Amended Settlement at § I(28).

The "Class Period" is October 30, 2013 to December 31, 2018. *See* Amended Settlement, § I(7). While the class start period is the same for both the settlement class and the complaint (5 years prior to the filing of this Action), the end period has been narrowed to end on December 31, 2018.[3]

### III.   SUMMARY OF THE SETTLEMENT'S KEY PROVISIONS

#### 1.   Monetary Recovery

The Settlement provides a maximum recovery of $174,980 (the "Global Settlement Fund"). Amended Settlement at §§ II(2) and III(3). If the Court approves the Settlement, the following estimates the breakdown of payments from the Global Settlement Fund:

- $111,312.67[4] for estimated settlement funds to the Settlement Class (the "Net Settlement Fund");
- $16,000 for administration costs regarding the Settlement;
- $3,500 for a Service Award to Plaintiff; and
- $41,967.33 for attorneys' fees and $2,200 in litigation costs. (the "Class Counsel Award").

Amended Settlement at § III(3),(8), (12), (13); Szamet Decl. at ¶7; See also PGCAS, Section 1)(f).

The amount of the Net Settlement Fund is contingent on the number of consumer reports obtained on individuals who remain in the Settlement Class.  Szamet Decl. ¶8. The number of consumer reports obtained for each Settlement Class member may differ, and thus Settlement Class members may be entitled to more, or less, than others, based on the number of consumer reports obtained for each of them. Szamet Decl. ¶9. With Defendant's class data finalized, Defendant has determined that there are 1,041 Class Members, with

---

[3]   See Local Procedural Guidance for Class Action Settlements, Preliminary Approval ("PGCAS"), Section 1)(a).
[4]   See PGCAS, Section 1)(e).

4

respect to whom 1,476 consumer reports were obtained.  Szamet Decl. ¶10.[5]

In recognition of Defendant's potential statute of limitations defense against alleged claims arising from consumer reports that Defendant procured or caused to be procured on Class Members from October 30, 2013 through October 29, 2016, the Parties agree that the Net Settlement Amount shall be distributed to Class Members as follows:

Eighty-seven percent (87%) of the Net Settlement Amount shall be allocated to alleged claims arising from consumer reports that Defendant procured or caused to be procured on Class Members from October 30, 2016 through December 31, 2018. The amounts will be allocated pro rata based on the number of consumer reports pulled for each Class Member. The Parties estimate that the portion of the Net Settlement Amount allocated to these alleged claims will be approximately $96,842.02, which would result in a net amount of approximately $124.64 per consumer report given that there were 777 consumer reports pulled during this time period; and

Thirteen percent (13%) of the Net Settlement Amount shall be allocated to alleged claims arising from consumer reports that Defendant procured or caused to be procured on Class Members from October 30, 2013 through October 29, 2016. The amounts will be allocated pro rata based on the number of consumer reports pulled for each Class Member. The Parties estimate that the portion of the Net Settlement Amount allocated to these alleged claims will be approximately $14,470.65, which would result in a net amount of approximately $20.70 per consumer report given that there were 699 consumer reports pulled during this time period.  Amended Settlement at § III(3)(a)-(b).

This is a non-reversionary, total payout Settlement.[6] Amended Settlement § III(3). Any funds remaining in the Global Settlement Fund due to uncashed Settlement checks

---

[5]  See PGCAS, Section (1)(e).
[6]  See PGCAS, Section 1)(h).

**RENEWED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

1   (after a 180-day negotiability period) will be remitted to the Education Fund of the

2   National Association of Consumer Advocates ("NACA Education Fund"), a 501c(3)

3   non-profit organization. Amended Settlement at § III(11).[7]  The parties selected the

4   NACA Education Fund because of its focus on consumer rights, an issue directly

5   implicated by Plaintiff's allegations in this case.  Szamet Decl. ¶11.  Per NACA's

6   Education Fund description available on its website, "The Education Fund supports

7   the charitable and educational activities undertaken by NACA, including fostering

8   justice for consumers, promoting consumer legal rights, educating the public about

9   relevant issues, encouraging communication between consumers, consumer

10  advocates and consumer attorneys, and engaging in activities that describe and

11  expose unfair business practices that harm consumers."

12       Neither Plaintiff, nor any member of Plaintiff's Counsel's firm, Kingsley &

13  Kingsley, APLC, or Emil Davtyan and his law firm Davtyan Law Firm, Inc. have

14  any relationship with the NACA, outside of the present settlement. Szamet Decl.

15  ¶12; Dkt. No 40-1 and 40-2.  QGT similarly does not have any relationship with the

16  NACA.  Morgan, Lewis & Bockius LLP does not have an existing or prior client

17  relationship with the NACA.  None of QGT's attorneys at Morgan, Lewis & Bockius

18  LLP who have defended the Company in this matter have any relationship with the

19  NACA either nor are they aware of any Morgan Lewis' attorneys who do.  However,

20  given that Morgan Lewis is an international law firm with over 2,200 legal

21  professionals in 31 offices, it is possible that an attorney within the firm has had

22  some relationship with the NACA.

23       Class Members (*i.e.*, those who do not opt of the Settlement) wanting to participate

24  in the Settlement need not do anything. *See Amended* Settlement at §§ I(27)-(28); *and see*

25  Proposed Notice (attached as Exhibit A to the Amended Settlement Agreement).

26  Individuals in the Settlement Class who do not want to participate in the Settlement may

27

28  ────────────────
    [7]   See PGCAS, Section  8).

submit to the Settlement Claims Administrator a Request for Exclusion. Amended Settlement, § III(15); Proposed Notice, pp. 4-5.

## 2.   **The Release**

Class Members will release Defendant and others "from any and all claims of any kind whatsoever, whether known or unknown, whether based on common law, regulations, statute, or a constitutional provision, under state, federal or local law, arising out of the allegations made in the Action and that reasonably arise, or could have arisen, out of the facts alleged in the Action as to the Class Members, including, but not limited to, claims arising from the procurement of a consumer report on them by any of the Released Parties, and any other claims for violations of the Fair Credit Reporting Act, 15 U.S.C. §1681b, *et seq.,* or related federal, state, and/or local laws whether willful, or otherwise, for declaratory relief, statutory damages, punitive damages, costs, and attorneys' fees.  Notwithstanding the foregoing, nothing in the Settlement releases any claims that cannot be released as a matter of law." Amended Settlement at §III(17).

The release is narrowed to the facts and claims arising out of the operative complaint.[8]  A settlement agreement may release claims that are "based on the identical factual predicate as that underlying the claims in the settled class action" even though the claims were "not presented and might not have been presentable in the class action" at the time.  *Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010).  Where a proposed release "track[s] the breadth of Plaintiff's allegations in the action and the settlement does not release unreleased claims that class members have against defendants," the identical factual predicate doctrine is satisfied and the release is appropriate.  *See Collins v. Cargill Meat Solutions Corp.*, 274 F.R.D. 294, 303 (E.D. Cal. 2011).

## 3.   **The Settlement Mechanism and Administration**

---

[8]   See PGCAS, Section 1)(c).

**RENEWED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

The Parties met and conferred regarding a third-party settlement administrator to administer the Settlement claims process (ILYM Group, Inc and JND Legal Administration). Szamet Decl. ¶13. Plaintiff obtained administration bids from several third-party settlement administrators. Id. ILYM submitted a bid for $17,895.90, while JND's bid was for $15,592.[9] Id.  Accordingly, the Parties agreed to use JND Legal Administration to administer the Settlement claims process. Szamet Decl. ¶14; Amended Settlement at § (III)12.

The Settlement Administrator will send the Settlement Class a Notice explaining the terms and conditions of the Settlement. *Id.* at § III(14)(1). (A copy of the proposed Notice is attached the Settlement as Exhibit A). After the Notice is mailed, individuals in the Settlement Class will have 60 days[10] to object to, or opt out of, the Settlement. *Id.* § III(15). The Settlement further provides it shall become effective only after the Court holds a final "fairness" hearing and finally approves the Settlement. *Id.* at § III(2); *see also* Notice at pp. 2 and 5-6. The proposed Notice advises the Settlement Class about the fairness hearing, their opportunity to attend and be heard. *Id.* At the fairness hearing, the Parties will be prepared to address any concerns raised by Class Members or the Court, and the Court will therefore have a second, more comprehensive opportunity to review and consider the Settlement, as well as any objections to the Settlement.

## IV.   THE LEGAL FRAMEWORK WEIGHS IN FAVOR OF GRANTING PRELIMINARY APPROVAL OF THE SETTLEMENT

Class actions are generally subject to a "strong judicial policy" favoring settlement. *Alberto v. GMRI, Inc.,* 252 F.R.D. 652, 658 (E.D. Cal. 2008) (citing *Class Plaintiffs v. City of Seattle,* 955 F.2d 1268, 1276 (9th Cir. 1992)). Under Rule 23 (e), class action settlements are subject to court approval.

Courts evaluate class action settlements in two stages. *Alberto,* 252 F.R.D.

---

[9]   See PGCAS, Section 2.
[10]  See PGCAS Section 9.

**RENEWED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

at 658. At the first stage, courts conditionally certify settlement classes, preliminarily approve settlements pending final fairness hearings, and authorize distribution of notices regarding proposed settlements. *Id.* (citations omitted). *See also Manual for Complex Litigation* § 21.632 (2004) (summarizing "preliminary fairness review"). The second stage involves a fairness hearing occurring well after notice is provided to the class, thus allowing time for putative class members to submit claims, objections, or requests to opt out. The court then decides if the proposed settlement should be approved as a fair, adequate, and reasonable resolution of the underlying dispute. *Id.* at 659 (citations omitted).

For the reasons set forth below, the Parties submit: (a) a settlement class should be conditionally certified; (b) the Settlement should be preliminarily approved as fair, reasonable, and adequate; and (c) the Notice should be distributed to the Settlement Class.

## 1.   <u>The Settlement Class Should be Certified</u>

To facilitate the Settlement, the Parties respectfully ask the Court to conditionally certify the following Settlement Class under FRCP 23 (e):

> all individuals who applied for employment with and/or were employed by Defendant in the United States and were the subject of a consumer report that was procured by Defendant or caused to be procured by Defendant through third-party consumer reporting agency First Contact HR during the Class Period (namely, October 30, 2013 to December 31, 2018).[11]

---

[11]   Under the FCRA, claims must be filed within the earlier of (1) "2 years after the date of discovery by the plaintiff of the violation that is the basis" for the FCRA claim, or (2) "5 years after the date on which the violation that is the basis for such liability occurs," without respect to the plaintiff's knowledge of the violation. 15 U.S.C. §§1681p (1)-(2). A plaintiff discovers facts giving rise to a claim when he or she learns the defendant procured a background report after using an allegedly deficient disclosure form. *Wirt v. Bon-Ton Stores, Inc.*, 134 F. Supp.3d 852, 858–59 (M.D. Pa. 2015); *see also Milbourne v. JRK Residential Am., LLC*, No. 3:12CV861, 2016 WL 1071569, at *6 (E.D. Va. Mar. 15, 2016); *Moore v. Rite Aid Headquarters Corp.*, No. 13–1515, 2015 WL 3444227, at *8 (E.D. Pa May 29, 2015). Here, the Class Period is premised upon the broader 5-year statute of limitations.

<u>RENEWED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT</u>

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Amended Settlement at §§ I(5) and (7). The Parties agree, but only for purposes of the Settlement, the criteria for certifying a settlement class are satisfied. *Settlement* at § II(1); Szamet Decl. ¶15.

> a.      All Four FRCP 23(a) Criteria are Met.

***FRCP 23(a)(1): The class is so numerous that joinder of all members is impracticable.*** "As a general rule, classes numbering greater than forty individuals satisfy the numerosity requirement." *Quintero v. Mulberry Thai Silks, Inc.,* No. 08-2294, 28 I.E.R. Cas. (BNA) 607, 2008 U.S. Dist. LEXIS 84976, at *7 (N.D. Cal. Oct. 22, 2008) (citation omitted). Here, approximately 1,041 individuals comprise the Settlement Class. Szamet Decl. ¶16; Settlement at § II(4). Consequently, numerosity is easily satisfied.

***FRCP 23(a)(2): There are questions of law or fact common to the Class.*** The commonality requirement is liberally construed. *Alberto v. GMRI, Inc.*, 252 F.R.D. at 660 (citation omitted); *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998) (concluding Rule 23(a)(2) is "permissively" construed). The class' claims must share substantial issues of law or fact, but need not be identical. *Quintero*, 2008 U.S. Dist. LEXIS 84976, at *8. Either "shared legal issues with divergent factual predicates" or "a common core of salient facts coupled with disparate legal remedies within the class" suffices. *Hanlon,* 150 F.3d at 1019.

Under the FCRA, an employer, or prospective employer, cannot "procure, or cause a consumer report to be procured, for employment purposes with respect to any consumer unless ... a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes." 15 U.S.C. § 1681b(b)(2)(A)(i). Here, the Settlement Class is all individuals who, between October 30, 2013 and December 31, 2018, in connection with their application for employment with Defendant,

**RENEWED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

completed Defendant's standard form purporting to authorize a consumer report verifying their background and experience. Szamet Decl. ¶17. Based on these common factual and legal issues, the Parties submit sufficient commonality exists. Id.

**FRCP 23(a)(3): Plaintiffs claims are typical of the class' claims.** As with commonality, the typicality standard is "permissive[ly]" applied. *See Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003) (quoting *Hanlon*, 150 F.3d at 1020). More specifically, it is satisfied when a class representative's claim is "reasonably coextensive with those of absent class members; they need not be substantially identical." *Id.*

Plaintiff further alleges the standardized form was not merely a disclosure; it included a liability release stating: "I release and hold harmless from all liability any individual or entity requesting or supplying information with respect to my application for employment." DktNo. 1, ¶ 24. According to Plaintiff, Defendant required all applicants to complete the same form that violated the FCRA's prohibition against including extraneous information in a required disclosure. Dkt No. 1, ¶ 25.  Plaintiff further alleges that "[b]ecause Defendant unlawfully included extraneous information in its standard form permitting Defendant to obtain a consumer report verifying Plaintiff's background and experience, Plaintiff *was confused by the standard form document and did not understand* that Defendant would be requesting a 'consumer report as defined in the FCRA.'" Dkt. No. 1, ¶ 32 (emphasis added).

For the very reasons that the Court found that Plaintiff's allegations in the Complaint sufficiently establish "a particularized and concrete injury giving rise to an Article III case or controversy," *see* Order, 9:12-22, it similarly should find that Plaintiff's claims are sufficiently typical of the class as a whole.  Plaintiff alleges that Defendant violated his and other class members' rights under the FCRA by including an extraneous liability waiver in its background check disclosure form.  According

11

to Plaintiff, this liability waiver caused him confusion and an inability to understand that Defendant would be procuring a background report on him.  Therefore, like the plaintiff in *Syed*, Plaintiff alleges that he was not aware that in signing the "Applicant Notice and Consent Document" (attached as Exhibit "2" to the Szamet Decl.) that he was authorizing the procurement of a consumer report.

As the Ninth Circuit explained in *Syed*, a purported liability waiver distracts an applicant's attention from the disclosure itself, such that the applicant is unaware that he is authorizing a background check:

> [A] liability waiver . . . pulls the applicant's attention away from his privacy rights protected by the FCRA by calling his attention to the rights he must forego if he signs the document. Indeed, by reading M-I's Disclosure Release, *a job applicant could reasonably conclude* that his signature was not consent to the procurement of the consumer report, but to a broad release of the employer from claims arising from the totality of the "investigative background inquiries" referenced in the first sentence of the form.

853 F.3d at 502 (emphasis added).  Given the disclosure's purported liability waiver, Plaintiff asserts that his FCRA claims are timely pled because he did not discover that Defendant procured a background report on him until reviewing his personnel file in 2018 and that other settlement class members were similarly unaware that Defendant procedure a consumer report on them.  *Syed* suggests an objective reasonable person standard for evaluating whether a liability waiver in a disclosure causes an applicant to not understand what he is authorizing (*i.e.*, a standard capable of resolution on a class basis), not a subjective person-by-person standard that evaluates whether the applicant was actually confused by the waiver.

As such, Plaintiff has pled a theory common to the entire class that if proven would not only make his FCRA claims timely pled but also those of all other settlement class members.  The Court speculates in its Order that there is a "real possibility" that class members whose claims are indisputably timely will be harmed by "the time and preoccupation" Plaintiff will have to devote to QGT's statute of

limitations defense. Order, 14:15-17. The Court's task, though, at this stage is to evaluate the allegations and class theory of liability Plaintiff has presented, as opposed to what might or might not transpire were the case to be litigated to a judgment on the merits.[12] *See Quezada v. Loan Center of Cal., Inc.*, 2009 WL 5113506, at *3 (E.D. Cal. Dec. 18, 2009) ("[T]he court must accept the substantive allegations made in the complaint as true even if the plaintiff may not be able to later prove the allegations.") Here, Plaintiff believes that he has put forth a viable class theory that if proven would establish that he has suffered the same injury as other settlement class members and that given the liability waiver in the disclosure that no class members were aware, nor should they have been aware, that Defendant procured a consumer report and therefore all settlement class members' claims are timely. Accordingly, there is nothing "unique" about Plaintiff's claims that would render them atypical to the class as a whole. As the Court even noted in its Order, other judges in this District have reached similar conclusions. *See Corcoran v. CVS Health*, 2019 WL 6250972, at *5 (N.D. Cal. Nov. 22, 2019); *Schofield v. Delta Air Lines, Inc.*, 2019 WL 955288, at *3-4 (N.D. Cal. Feb. 27, 2019).

The Court is not bound by *Vizzi v. Mitsubishi Motors North America, Inc.*, No. SACV 08-00650-JVS (RNBx), 2010 WL 11515266, at *3 (C.D. Cal. Feb. 22, 2010), nor does *Vizzi* compel a different result. In *Vizzi*, the plaintiff's claims for breach of contract, breach of implied warranty of merchantability, and unfair competition indisputably fell outside the statutes of limitations. *Id.* at *2. To overcome this fact,

---

[12] Were the case to continue to be litigated, Defendant might attempt to introduce evidence showing that notwithstanding the alleged non-compliant FCRA disclosure Plaintiff and other class members were aware or should have been aware through other means that a background report was procured and that this would require an individualized inquiry for every class member whose claims might potentially be time-barred. Plaintiff does not believe that even if Defendant could introduce such evidence that it would bar class certification. In any event, based on the record before the Court, Plaintiff has alleged a viable class theory of recovery through which each class member has been subjected to the same conduct and suffered the same injury. Therefore, Plaintiff's claims are sufficiently typical of the class as a whole.

**RENEWED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

the plaintiff pled fraudulent concealment as a way to toll the applicable statutes of limitations. *Id.* The import of this fact is that before he could even proceed with the claims he pled the plaintiff in *Vizzi* first had to prove—and bore the burden of proving—that the defendant engaged in fraudulent concealment. The same is not true here where Plaintiff's claims arguably are timely, and Defendant bears the burden of proving its statute of limitations defense. Moreover, the plaintiff in *Vizzi* did not appear to present the court with a viable theory for overcoming the statute of limitations issue on a class basis (which would have been challenging in any event given that fraudulent concealment requires proof of an individual's "justifiable reliance," *see Hackethal v. Nat'l Casualty Co.*, 189 Cal.App.3d 1102, 1110 (1987)). Here, on the other hand, as explained in greater detail above, Plaintiff has presented the Court with a viable class theory. As such, *Vizzi* is distinguishable.

In addition, as discussed further below, the amended settlement will pay class members with indisputably timely claims $124.64 per consumer report, which is more than any other FCRA class action settlement involving purported liability waivers save one that counsel could locate and is nearly three times the net amount the court in *Syed* approved. Accordingly, the settlement more than adequately compensates all settlement class members for their purported FCRA claims, and Defendant's potential statute of limitations defense has not caused Plaintiff to undervalue any class members' claims.

Although Defendant does not admit these allegations, for purposes of approving this Settlement, Defendant does not oppose Plaintiff's assertion sufficient typicality exists for settlement purposes. Szamet Decl. ¶18.

***FRCP 23(a)(4): Plaintiff and Class Counsel will fairly and adequately protect the class' interests.*** Courts have interpreted this requirement as posing two questions: whether the class representative and her counsel (1) have conflicts of interest with putative class members, and (2) will vigorously prosecute the action on behalf of the class. *See id.* (citing *Hanlon* and other cases). Plaintiff and Class

14

Counsel do not have interests antagonistic to those of the Settlement Class. Szamet Decl. ¶19. To the contrary, Plaintiff shares the same interest—*i.e.*, recovering damages resulting from alleged violations of Defendant's FCRA obligations. Id. Moreover, Class Counsel have extensive experience prosecuting similar such class actions. Szamet Decl. ¶20 and ¶¶31-32. Kingsley & Kingsley is experienced in prosecuting employment and consumer matters, and the firm has focused its practice since 2000 on complex litigation including wage and hour and consumer class actions. *Id.* Kingsley & Kingsley currently serves as class counsel for dozens of pending class action lawsuits in Northern, Eastern, Central, and Southern California. *Id.* A list of representative cases that Kingsley & Kingsley has handled is included in the accompanying declaration of Kelsey M. Szamet. Thus, Plaintiff and Class Counsel are adequate representatives for the Class.  The firm has diligently and aggressively pursued this action. After factoring in the risks discussed herein, Class Counsel believes that the proposed settlement is fair and reasonable.

Moreover, Plaintiff is an adequate class representative and does not have a conflict of interest.  Based on the recovery that Plaintiff has obtained for the class as a whole, and specifically for claims that accrued since October 30, 2016, the record before the Court supports a finding that Plaintiff adequately represents the interests of the settlement class.

### b.     The FRCP 23(b)(3) Criteria are Met.

To certify a class under FRCP 23(b)(3), a court must find (1) common questions of fact or law predominate over questions affecting individual members of the proposed class, and (2) a class action is a superior method for fairly and efficiently adjudicating the controversy. FRCP 23(b)(3). The Settlement easily meets these criteria.

***The predominance requirement is met***. Predominance "focuses on the relationship between the common and individual issues. When common questions present a significant aspect of the case and they can be resolved for all members of

15

the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.,* 244 F.3d 1152, 1162 (9th Cir), *cert. denied,* 534 U.S. 973,122 S. Ct. 395 (2001) ("Local Joint Executive Bd.") (quoting *Hanlon,* 150 F.3d at 1022).

Predominance is readily met because, as in numerous other class actions, Plaintiff's claim is premised in his allegation Defendant maintained a uniform policy of providing the Settlement Class with a standardized form facially violating the FCRA. (ECF No. 1, ¶¶ 24-25; Szamet Decl. ¶21.) Plaintiff's claim is based on factual and legal questions about Defendant's policy that are not only common to the Settlement Class, but predominate under FRCP 23 (e). Id. These aspects of the case strongly support a finding that the predominance requirement is satisfied. Szamet Decl. ¶22.  *See, e.g., In re Wells Fargo Home Mortgage Overtime Pay Litig.,* 527 F. Supp.2d 1053, 1068 (N.D. Cal. 2007); *In re Wells Fargo Home Mortg. Overtime Pay Litigation*, 571 F.3d 953, 958 (C.A.9 2009).

For the reasons discussed in the typicality section above, Plaintiff believes that he has put forth a viable class theory that if proven would establish that he has suffered the same injury as other settlement class members and that given the liability waiver in the disclosure that no class members were aware, nor should they have been aware, that Defendant procured a consumer report and therefore all settlement class members' claims are timely.  If the Court finds that Defendant's FCRA disclosure is not compliant because it contains a liability waiver, then Plaintiff submits that the Court must also necessarily find that the disclosure did not put class members on notice that a background report was to be procured or that class members were authorizing the procurement of such a report.  Common issues therefore predominate over individual ones, even as to the statute of limitations issue.

***Superiority is met.*** Whether a class action is a superior method of adjudicating a controversy involves a "comparative evaluation of alternative mechanisms of

dispute resolution." *Hanlon,* 150 F.3d at 1023. The circumstances here are comparable with those involving the Las Vegas Sands' former casino employees who sought damages for their employer's failure to provide a statutorily required 60-day notice before closure. When affirming the district court's approval of a class action settlement, the Ninth Circuit stated:

> This case involves multiple claims, some for relatively small individual sums. Counsel for the would-be class estimated that, under the most optimistic scenario, each class members would recover about $1,330. If plaintiffs cannot proceed as a class, some - perhaps most - will be unable to proceed as individuals because of the disparity between their litigation costs and what they hope to achieve.

*Local Joint Executive Bd.,* 244 F.3d at 1163 ("Class actions ... may permit the plaintiffs to pool claims which would be uneconomical to litigate individually.") (*citing Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809, (1985). In such a situation, superiority is "easily satisfied." *Id.* For purposes of approving the Settlement, the Parties submit superiority is equally satisfied. Szamet Decl. ¶23.

### 2.   **The Proposed Settlement is Fair, Just and Adequate.**

Courts weigh several factors when determining if a settlement is fair, reasonable, and adequate under Fed. R. Civ. P. 23(e)(2). *Manual for Complex Litigation* § 21.62. The inquiry has been summarized as follows:

> Fairness calls for a comparative analysis of the treatment of class members vis-a-vis each other and vis-a-vis similar individuals with similar claims who are not in the class. Reasonableness depends on an analysis of the class allegations and claims and the responsiveness of the settlement to those claims. Adequacy of the settlement involves a comparison of the relief granted relative to what class members might have obtained without using the class action process.

*Id.,* § 21.62 at 315.

At the preliminary approval stage, courts do not make a final determination

about fairness, reasonableness, and adequacy. Instead, the key question is whether the Settlement is "potentially fair, as the Court will make a final determination of [the settlement's] adequacy at the hearing on Final Approval, after such time as any party has had a chance to object and/or opt out." *Acosta v. Equifax Info. Servs. LLC,* 243 F.R.D. 377, 386 (C.D. Cal. 2007). Thus, the inquiry is if the Settlement falls within the "range of possible approval" and appears to be sufficiently fair, reasonable, and adequate to warrant distributing notice to the Settlement Class informing them about the Settlement. *Molski v. Gleich,* 318 F.3d 937, 944 (9th Cir. 2003). *See also Manual for Complex Litigation* § 21.632. "Once the judge is satisfied as to the ... results of the initial inquiry into the [1] fairness, [2] reasonableness and [3] adequacy of the settlement," the court should direct notice to issue and schedule a final approval hearing. *Id.,* § 21.633 at 321.

    a.  The Settlement is Fair.

**Fairness of distribution among Class Members.** The Settlement is fair because the basis for recovery is the same for each Class Member. Szamet Decl. ¶24. All individuals comprising the Settlement Class are eligible to receive individual payments from the Net Settlement Fund, and each Class member will be bound by the same release. Id.  In recognition of Defendant's potential statute of limitations defense against alleged claims arising from consumer reports that Defendant procured or caused to procured on Class Members from October 30, 2013 through October 29, 2016, the Net Settlement Amount shall be distributed to Class Members based upon a two-year statute of limitations and five-year statute of limitations. Amended Settlement at § III(3).(a)-(b).

**Fairness of proposed attorneys' fees and expenses.** The allocation of the Global Settlement Fund between Class Members and Class Counsel is also fair because Class Counsel may seek to recover no more than one-third of the Global Settlement Fund in fees. Amended Settlement at § III(13).  The fee request here of $41,967.33 of the Global Settlement Fund, equals 24%, for all current and future

**RENEWED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

attorneys' fees of Class Counsel. Id.

The requested fees are fair compensation for undertaking complex, risky, expensive, and time-consuming litigation solely on a contingency basis. Szamet Decl. ¶25. Furthermore, the fee request is in line with other attorneys' fees awards for similar actions, particularly when class members do not have to allege or prove they suffered injuries. Id.

In class actions, courts have approved attorneys' fee requests couched as a percentage of the "common funds" created by settlements. *Vincent v. Hughes Air West, Inc.*, 557 F.2d 759, 769 (9th Cir. 1977). The common fund approach "spread[s] litigation costs proportionally among all the beneficiaries so that the active beneficiary does not bear the entire burden alone." *Id.*

Courts have long recognized that, when attorneys' efforts result in the creation of a common fund that benefits the plaintiff and unnamed class members, counsel have an equitable right to be compensated from that fund for their successful efforts in creating it. *See, e.g.*, *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Staton v. Boeing Co.*, 327 F.3d 938, 967 (9th Cir. 2003). "The common fund doctrine provides that a private plaintiff, or his attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim is entitled to recover from the fund the costs of his litigation, including attorneys' fees." *Vincent v. Hughes Air West, Inc.*, 557 F.2d 759, 769 (9th Cir. 1977); *see also In re Omnivision Tech., Inc.*, 559 F.Supp.2d 1036, 1046 (N.D. Cal. 2008). This doctrine rests on the understanding that attorneys should normally be paid by their clients, and that unless attorneys' fees are paid out of the common fund, those who benefitted from the fund would be unjustly enriched. *Boeing*, 444 U.S. at 478. To prevent this unfair result, courts exercise their inherent equitable powers to assess attorneys' fees against the entire fund, thereby spreading the cost of those fees among all those who benefitted. *Id.*

Moreover, when deciding fee awards, several courts have expressed

**RENEWED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

frustration with an alternative "lodestar" approach, which usually involves wading through voluminous and often indecipherable time records. Commenting on the lodestar approach, in *In re Activision Securities Litigation,* 723 F. Supp. 1373, 1375 (N.D. Cal. 1989), Chief Judge Marilyn Hall Patel wrote:

> This court is compelled to ask, "Is this process necessary?" Under a cost-benefit analysis, the answer would be a resounding, "No!" Not only does the [lodestar] analysis consume an undue amount of court time with little resulting advantage to anyone, but in fact, it may be in the detriment of the class members. They are forced to wait until the court has done a thorough, conscientious analysis of the attorneys' fees petition. Or, class members may suffer a further diminution of their fund when a special master is retained and paid from the fund. Most important, however, is the effect the process has on the litigation and the timing of settlement. Where attorneys must depend on a lodestar approach, there is little incentive to arrive at an early settlement.

The common fund approach is preferable to the lodestar because it: (1) aligns the interests of class counsel and absent class members; (2) encourages efficient resolution of the litigation by providing an incentive for early, yet reasonable, settlement; and (3) reduces the demands on judicial resources. *In re Activision Securities Litigation*, 723 F. Supp. at 1378-79. Accordingly, courts routinely use the common fund approach when determining fee awards accompany class action settlements (*See, e.g., In re Pacific Enterprises Securities Litigation*, 47 F.3d 373, 37879 (9th Cir. 1994) (approving attorneys' fees of 33 1/3% of settlement fund).

According to *Newberg on Class Action* § 14:6 (4th ed. 2008): "No general rule can be articulated on what is a reasonable percentage of a common fund. Usually 50% of the fund is the upper limit on a reasonable fee award from a common fund in order to assure that the fees do not consume a disproportionate part of the recovery obtained for the class, although somewhat larger percentages are not unprecedented." Historically, courts have awarded fees ranging between 20% and

**RENEWED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

50% of the common fund. *Id. See also In re Activision Securities Litigation*, 723 F. Supp. 1373, 1378 (N.D. Cal. 1989). Class Counsel's application for one-third of the Global Settlement Fund is thus within the range of reasonableness and fair.

The typical range of acceptable attorneys' fees in the Ninth Circuit is up to 33.33% of the total settlement value *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (1998); *Staton*, 327 F.3d at 952. However, the exact percentage varies depending on the facts of the case, and in "most common fund cases, the award exceeds that benchmark." *Knight v. Red Door Salons, Inc.*, 2009 WL 248367 (N.D. Cal. 2009).

Class Counsel requests a fee award in the amount of $41,967.33, which represents 24% of the $ 174,980.00 common fund. Szamet Decl. ¶26. Class Counsel's application for an award of attorneys' fees is reasonable and fair. Id.  This litigation resulted in the creation of a common fund for the Class, namely a non-reversionary settlement fund of 174,980.00. Id. Because no Class Members will pay fees to Class Counsel for their efforts during the litigation, equity requires them to pay a fair and reasonable fee based on what the market would traditionally require, no less than if they had hired private counsel to litigate their cases individually. Id. Class Counsel is therefore entitled to fees from the settlement fund as a whole. Id.

A lodestar cross-check also confirms that the percentage requested is reasonable. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 1050 (9th Cir. 2002) ("while the primary basis of the fee award remains the percentage method, the lodestar may provide a perspective on the reasonableness of a given percentage award"). Szamet Decl. ¶27.

Class Counsel's attorneys' fees in the present case are broken down as follows:

| | **HOURS** | **HOURLY RATE** | **TOTALS** |
|---|---|---|---|
| Eric B. Kingsley | 7.0 | $825.00 | $5,775.00 |

21

| Liane Katzenstein Ly | 1.1 | $585.00 | $643.50 |
|---|---|---|---|
| Kelsey M. Szamet | 53.4 | $585.00 | $31,239.00 |
| David Keledjian | 32.7 | $385.000 | $12,589.50 |
| Justin M. Aufderhar | 44.2 | $325 | $14,365.00 |
| **TOTAL** | 138.4 | | $64,612.00 |

Szamet Decl. ¶28.

Here, Class Counsel has already spent over 138 hours on this litigation, resulting in lodestar fees through the present of $64,612. Szamet Decl. ¶29.  Note that rates are provided at the current hourly rate, which is appropriate as a means of compensating for delay in payment. (*Missouri v. Jenkins by Agyei* (1989) 491 U.S. 274, 283-84; *In re Washington Public Power Supply System Securities Litigation* (9th Cir. 1994) 19 F.3d 1291, 1305.)

Using the above lodestar, the percentage of the fund requested represents a multiplier of approximately .65, which is well within the range of reasonable multipliers approved by courts within the Ninth Circuit. *Vizcaino v. Microsoft Corp.* (9th Cir. 2002) 290 F.3d 1043, 1051 (quoting *In re Prudential Ins. Co. America Sales Practice Litigation Agent Actions* (3d Cir. 1998) 148 F.3d 283, 341) (holding that multipliers "ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied"); Szamet Decl. ¶30. Comparison with the lodestar thus demonstrates that the requested fee award of **$41,967.33** is reasonable. Id.

Finally, Kingsley & Kingsley is experienced in prosecuting employment and consumer litigation, and the firm has focused its practice since the year 2000 on wage, hour, and working condition violations. Szamet Decl. ¶31.  They are well-versed in class action litigation and has diligently and aggressively pursued this action.  Kingsley & Kingsley currently serves as class counsel for dozens of pending class action lawsuits in Northern, Central, and Southern California. Id. Throughout the past decade, attorneys at Kingsley & Kingsley have also actively litigated

22

countless wage and hour and consumer class actions.  Id.  Below is a representative sampling of those cases[13]:

    a. *Goodman v. Crystal Ventures, Inc.* (No. BC245561, L.A. Super. Ct.) In January 2002, Hon. Anthony Mohr granted final approval of settlement in the gross amount of $255,000 and the court approved the attorneys' fee request of 33 1/3%.

    b. *Johnston v. The Cheesecake Factory* (No. BC316180, L.A. Super. Ct.) In December 2005, Honorable Rita Miller granted final approval of Settlement in the gross amount of $4,000,000 and the court granted attorneys' fees request of 30%.

    c. *Tumino v. HOB Entertainment* (No. BC327962, L.A. Super. Ct.)   In May 2006, the Honorable Conrad R. Aragon granted final approval of Settlement in the gross amount of $1,000,000 and the court granted attorneys' fees request of 30%.

    d. *Ryan v. Hilton Hotels Corporation,* (No. BC364260, L.A. Super. Ct.) In March 2008, the Honorable Mary Thornton House granted final approval of Settlement in the gross amount of $1,675,000.00 and the court granted attorneys' fees request of 33 1/3%.

    e. *Gerritson v. Styles For Less, Inc.*, (No. BC402921, L.A. Super. Ct.)  In September 2010, the Hon. Kenneth R. Freeman granted final approval of Settlement in the gross amount of $2,000,000.00, and the court granted attorneys' fees request of 33.3%.

    f. *Lewis v. Collabrus, Inc., et al.*, (No. 109CV-142927, Santa Clara Super. Ct.)  In March 2012, the Honorable James P. Kleinberg granted final approval of Settlement in the gross amount of $2,000,000.00, and the court granted attorneys' fees request of 33.3%.

---

[13] See PGCAS, Section 11).

**RENEWED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

g. *Hirschinger v. Blue Cross of California*, Los Angeles Superior Court (No. BC402739, L.A. Super. Ct.)  In June 2013, the Honorable Lee Smally Edmund granted final approval of Settlement in the gross amount of $4,700,000.00, and the court granted attorneys' fees request of 38%.

h. *Anderson v. Total Renal Care, Inc.*, (No. BC388335, L.A. Super. Ct.) In January 2014, the Honorable William F. Highberger granted final approval of Settlement in the gross amount of $1,500,000.00 and the court granted attorneys' fees request of 33.33%.

i. *Rojas, et al. v. Sunview Vineyards of California, Inc.,* Eastern District (1:09-cv-00705 AWIJLT). This certified class action was approved for final settlement by the Honorable Anthony W. Ishii in October 2015, in the gross amount of $4,550,000.00, with attorneys' fees approved in the amount of $1,137,500.00.

j. *Westbrook v. International Surfacing Systems*, (No. RG10510015, Alameda Super. Ct.) In August 2015, the Hon. Wynne Carvill granted final approval of Settlement in the gross amount of $995,000.00, and the court granted attorney's fees request of 33.33%.

k. *Kane et al.* v. *Valley Slurry Seal*, (No. CV08-2483, Yolo Super. Ct.)  In March 2016 after a class trial with a verdict in the class's favor, the Honorable Daniel P. Maguire, awarded Kingsley & Kingsley and co-counsel $996,232.72 in attorney's fees.

l. *Aparacio v. Abercrombie & Fitch Stores, Inc.*, (No. BC499281, L.A. Super. Ct.) In June 2016, the Hon. Kenneth Freeman granted final approval of Settlement in the gross amount of $2,000,000.00, and the court granted attorney's fees request of 33.33%.

m. *Isaguirre v. Guess?, Inc., Los Angeles Superior Court (BC357631).* The matter was proposed for final settlement by the Honorable Richard L.

Fruin on February 19, 2016, in the gross amount of $5,250,000.

n. *Hirschinger v. Blue Cross of California*, Los Angeles Superior Court (BC402739).   The matter was approved for final settlement by the Honorable Lee Smally Edmund in June 2013, in the gross amount of $4,700,000.00, with attorney's fees request of 38%.

o. *Munoz, et al. v. Giumarra Vineyards Corporation*, United States District Court for the Eastern District of California (Case No.: 1:09-cv-00703 - AWI – JLT).   The matter was approved for final settlement by the Honorable Anthony W. Ishii in November 2017, in the gross amount of $6,100,000.00, plus interest, with attorney's fees benchmark award of $1,525,000.

p. *Pineda, et al. v. Grimmway Enterprises, Inc.*, Kern County Superior Court (BCV-15-101333).   The matter was approved for final settlement before the Hon. Stephen D. Schuett, Dept. 10, in January 2018, in the gross amount of $9,000,000 with attorneys' fees request of 33.33%.

Kingsley & Kingsley filed its first motion for class certification in the year 2000 and since that time has been appointed class counsel on dozens of wage and hour class actions that have been approved for class certification.   Szamet Decl. ¶32.  Since 2011, Kingsley & Kingsley has moved for class certification in 13 matters and has successfully obtained class certification in 12 of those cases. Id.   A brief sampling of which includes:

a. *Lewis v. Collabrus, Inc.*, Santa Clara County Superior Court (109CV-142927), approved for Class Certification in 2011.

b. *Melendrez v. JK Communications¸* No. BC497692, (L.A. Super. Court, filed December 19, 2012), court granted contested class certification and appointed Kingsley & Kingsley class counsel).

c. *Hirschinger v. Blue Cross of California*, Los Angeles Superior Court (BC402739), contested Class Certification approved in 2012.

25

**RENEWED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

d.   *Randell v. Tuesday Morning, Inc.*, Los Angeles Superior Court (BC403298), contested Class Certification approved in 2012.

e.   *Suarez v. Mazatlan, Inc.*, No. 37-2015-00002978-CU-OE-CTL (S.D. Super. Ct., filed January 27, 2015), court granted contested class certification and appointed Kingsley & Kingsley class counsel.

f.   *Amaro, et al v. Gerawan Farming, Inc.*, United States District Court for the Eastern District of California (1:14-cv-00147-DAD-SAB), contested Class Certification approved in 2016.

g.   *Ruiz v. Daniel C. Salas Harvesting, Inc.,* Kings County Superior Court (16C0214). Hon. Valerie R. Chrissakis granted class certification and appointed Kingsley & Kingsley as class counsel on May 4, 2018.

h.   *Weldon v. Geo Corrections & Detentions, LLC*, Kern County Superior Court (BCV-16-102833), contested class certification approved in 2018.

**The proposed Service Award is fair** [14]. Fairness principles favor a $3,500 Service Award for Plaintiff, who prosecuted this action and assisted Class Counsel throughout the litigation of this matter. Szamet Decl. ¶33.   Mr. Taafua's time includes researching and identifying competent counsel with relevant expertise, providing information to Class Counsel regarding the claims at issue, compiling documents, conducting several meetings and telephone conferences with his attorneys to discuss the status of the case and the theories of liability, and reviewing all relevant case documents. Id.  *League of Martin v. City of Milwaukee*, 588 F. Supp. 1004, 1024 (E.D. Wis. 1984), (concluding it is "not uncommon for class ... members to receive special treatment in settlement" when they have been instrumental in prosecuting the lawsuit). Moreover, Plaintiff incurred personal risk by bringing the Lawsuit; he could have been responsible for Defendant's costs, and his potential

---

[14]   See PGCAS Section 7).

**RENEWED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

1  employment opportunities may have been impacted by his public prosecution of the
2  Lawsuit. Szamet Decl. ¶34; *See, e.g., Koehl v. Verio,* 142 Cal. App. 4th 1313, 1328
3  (2006) (where defendant prevailed at trial, named plaintiffs were found to jointly
4  and severally liable for defendant's attorneys' fees). For these reasons, the Service
5  Award is fair.

6         b.   The Settlement is Reasonable.

7      There is risk associated with continued litigation, including the prospect that
8  a class might not be certified, or a certified class may be significantly smaller than
9  proposed. Szamet Decl. ¶35. In the Lawsuit, of particular importance to
10 determining the reasonableness of the Settlement are the significant liability
11 questions regarding purported violations of the FRCA.

12     Defendant likely would have advanced an argument that Plaintiff lacked
13 standing because he did not suffer, or allege, a concrete injury under the Supreme
14 Court's *Spokeo* decision.[15] Szamet Decl. ¶36.  Defendant also likely would have
15 advanced an argument that Plaintiff's claims were time-barred because he
16 allegedly knew or should have known that a background check was conducted at
17 the time he applied for employment with Defendant, yet did not bring this case
18 until more than three years after Defendant hired him.  Szamet Decl. ¶37. *See, e.g.*,
19 *Banga v. Equifax Info. Servs., LLC*, 473 Fed. App'x 712, 713 (9th Cir. 2012) ("The
20 district court properly granted summary judgment [on the FCRA claims] on statute
21 of limitations grounds because Banga failed to file her action within two years of
22 when she knew or should have known that defendant disclosed her credit report to
23 third parties for promotional or other improper purposes."). Because of the
24 uncertainty regarding FCRA liability, the $174,980.00 Global Settlement Fund is
25 more than reasonable. Szamet Decl. ¶38.

26
27 [15] *Spokeo, Inc. v. Robins*, 578 U.S. ---, 136 S.Ct. 1540, 1549-50 (2016) (concluding
standing requires "an invasion of a legally protected interest that is concrete and
28 particularized and actual or imminent, not conjectural or hypothetical")(internal
quotations omitted).

**RENEWED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

Risks and uncertainties are also present regarding damages. In particular, Plaintiff seeks statutory damages under the FCRA ranging between $100 and $1,000 per violation. Szamet Decl. ¶39. Defendant would have certainly argued the alleged violations were technical, and thus did not result in any injuries or damages. Id. For example, in *Hillson v. Kelly Services*, E.D. Mich. No. 2:15cv10803, 2017 WL 279814, at *7-8 (E.D. Mich. Jan. 23, 2017), the court preliminarily approved a settlement awarding $19 to each class member[16] for an alleged FCRA standalone disclosure violation. In *Hillson*, the court assumed each individual class member would recover $100 at trial, and observed, "once the $100 award is discounted by the likelihood of success at trial (which is conceivably in the ballpark of 19%), the amount of recovery under the settlement appears reasonable." *Id*. at *7.

Here, the proposed Global Settlement Fund represents more than Plaintiff's potential recovery at trial using $100 (1,476 reports x $100 = $147,600) and 12% of the potential recovery using $1,000 (1,476 reports x $1,000 = $1,476,000) ,[17] with an average gross settlement amount of $124.64 to each proposed Class Member for claims arising from consumer reports that Defendant procured or caused to be procured on from October 30, 2016 through December 31, 2018 and $20.70 to each proposed Class Member for claims arising from consumer reports that Defendant procured or caused to be procured on from October 30, 2013 through October 29, 2016. Szamet Decl. ¶40. Thus, the proposed settlement falls well above the approved discounted range for similar class settlements. *Id.*

Furthermore, while Class Counsel believe Plaintiff's claims are meritorious, they are experienced class action litigators, and understand the outcome of class certification, trial, and any attendant appeals are inherently uncertain, as well as likely to consume many months or years. Szamet Decl. ¶41. Thus, an important

---

[16]  In *Hillson*, there were two subclasses; members of the subclasses received settlement payments of $41 and $14, respectively, for an average of $19 (based on the number of individuals in each subclass).

[17]  See PGCAS, Section 1)(e).

**RENEWED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

factor courts consider when approving a class action settlement is the complexity, expense, and likely duration of the litigation. *Offices for Justice v. Civil Service Com'n,* 688 F.2d 615, 625 (9th Cir. 1982). More specifically, courts weigh the benefits of a proposed settlement against the expense and delay involved in achieving an equivalent, or more favorable, result at trial. *See, e.g., Young v. Katz,* 447 F.2d 431,433-34 (5th Cir. 1971). *See also* FRCP 1 (requiring a just, speedy, and inexpensive resolution of every action).

The "overriding public interest in settling and quieting litigation" is "particularly true in class action suits." *See Van Bronkhorst v. Safeco Corp.,* 529 F.2d 943, 950 (9th Cir. 1976) (footnote omitted); *see also 4 Newberg on Class Actions* § 11.41 (citing cases). This public policy favoring class action settlements applies with particular force here because the Settlement provides Class Members substantial, prompt, and efficient relief.

            c.      The Settlement is Adequate.

The adequacy of a class action settlement must be judged as "a yielding of absolutes and an abandoning of highest hopes ... . Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation." *Officers for Justice,* 688 F.2d at 634 (citation omitted). The Settlement is not to be judged against a speculative measure of what may have been achieved. *Linney v. Cellular Alaska P'ship,* 151 F.3d 1234, 1242 (9th Cir. 1998). Moreover, determining the adequacy of the Settlement "involves a comparison of the relief granted relative to what class members might have obtained without using the class action process." *Manual for Complex Litigation* § 21.62. An additional consideration is that the Settlement provides for payment to now, rather than a payment many years down the road, if ever. *See City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 463 (2d Cir. 1974).

The Amended Settlement provides a net recovery of $124.64 per consumer

**RENEWED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

report obtained within the two-year statute of limitations.  Counsel has been able to locate eight other FCRA class settlements involving background check disclosures with purported liability waivers post-*Syed* and has summarized these settlements in Exhibit "A" to this Motion.  The net recovery per class member or report in these settlements, respectively, is: $185.20, $121, $100, $75, $63.94, $47.31, $46.84, and $32.87.[18]  Accordingly, the Amended Settlement provides the second highest net recovery per consumer report for indisputably timely claims and provides significantly more than the majority of these settlements.  Indeed, the *Syed* case ultimately settled for $46.84 net per consumer report, which means that the Amended Settlement provides nearly three times greater recovery per report than the settlement that was approved in *Syed*.

In light of these comparable settlements, Plaintiff believes the Settlement is more than adequate. The present value of the Settlement far exceeds what the Settlement Class would have likely received if the underlying claims were fully litigated. Szamet Decl. ¶42.  Likewise, there was a high probability of drawn out litigation and risks the Settlement Class may not have prevailed. Id. For all of these reasons, the Court should preliminarily approve the Settlement.

### 3. The Notice Adequately Informs Class Members of the Settlement and Their Rights Thereunder.

A copy of the Parties' proposed Notice is attached to the Amended Settlement Agreement as Exhibit A.[19]   The Notice explains the claims in the Lawsuit, the essential terms of the settlement, that class members need to do nothing to recover under the Settlement, the procedures for requests to be excluded from the Settlement, and how to object to the Settlement. Szamet Decl. ¶43. The Notice also advises the Settlement Class about the fairness hearing, Class Members' rights with respect to

---

[18]  The settlement providing a $100 net recovery per consumer report has been granted preliminary approval, but not final approval yet.  All other listed settlements have been granted final approval.
[19]  See PGCAS, Section 3).

RENEWED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

that hearing, and how to get more information about the Settlement. Id.

The time period for submitting an opt out request from the Settlement is reasonable, as is the time for filing objections[20]; the Settlement Class will have adequate time to (1) digest the information provided in the Notice, and (2) obtain answers to questions about the Settlement. Id.

In its Order, the Court questioned whether the proposed notice procedure was fair and adequate because there is only a single notice and no reminder notice to settlement class members regarding the settlement and their right to opt out or object to the settlement.  Order, pp. 24-25.  As an initial matter, courts routinely approve settlements with the single notice procedure the Settlement contemplates in settlements like these where individuals are not required to opt into the settlement and the funds are non-reversionary.  *See, e.g.*, *Frieri v. Sysco Corp.*, 2019 WL 6467599, at *9 (S.D. Cal. Dec. 2, 2019); *Wright v. Renzenberger*, 2019 WL 8163480, at *7 (C.D. Cal. Nov. 25, 2019); *Tinoco v. Hajoca Corp.*, 2019 WL 4239130, at *11 (C.D. Cal. June 18, 2019); *Schofield*, 2019 WL 955288, at *9.

Moreover, the concerns in the Ninth Circuit decision that the Court references in its Order, *Roes 1-2 v. SFBSC Management, LLC*, 944 F.3d 1035 (9th Cir. 2019), are not present here.  First, there is not any indication that certain settlement class members might be difficult to reach by mail, like existed in *SFBSC*.  *See id.* at 1046 ("We find it particularly problematic that, despite concerns that former employees in particular might be difficult to reach by mail, the settlement provided no other means of reaching former employees.").  Second, to receive a cash payment in the settlement in *SFBSC*, class members had to take affirmative action (*i.e.*, submit a claim form within a given time period), hence the potential benefit of a reminder notice.  *See* 944 F.3d at 1047-48 ("[T]he proposed settlement has reversionary aspects, and those who did not receive notice and make a claim by the deadline can

---

[20]   *See* PGCAS, Section 5).

**RENEWED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

only possibly obtain dance fee payments—which are likely worthless to former employees."). Here, unlike in *SFBSC*, settlement class members need not take any action to participate in the settlement and none of the settlement monies will revert back to Defendant. For these reasons, the single contemplated notice satisfies any constitutional due process concerns and is the best notice practicable under the circumstances.[21]

Accordingly, Plaintiff respectfully asks the Court to approve the proposed Notice and authorize the Settlement Administrator to send to the Settlement Class the proposed Notice.[22]

## V.   LOCAL PROCEDURAL GUIDANCE FOR CLASS ACTION SETTLEMENTS, PRELIMINARY APPROVAL

The following is intended to address the remaining Sections under the PGCAS, not discussed above:

**1)(b) and (d):** These sections are inapplicable as this matter has not been certified as a class action under F.R.C.P. Rule 23.

**1)(g):** This section is inapplicable because this is a checks-mailed settlement. Class Members do not need to submit a claim form to receive payment or participate in the proposed settlement class.

**12):** Plaintiff will concurrently e-mail the Proposed Order Granting Preliminary Approval of the Class Action Settlement, in MS Word format, to the Court's PO e-mail address.

///

///

///

---

[21] Any follow-up notice would also increase the settlement administration costs, which contemplates a single notice.

[22] Within ten (10) days of Plaintiff filing his motion for preliminary approval, Defendant will provide notice of the proposed class action settlement under the Class Action Fairness Act ("CAFA") to the appropriate state and federal officials in accordance with 28 U.S.C. § 1715.

**RENEWED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

1

## VI.   <u>CONCLUSION</u>

For the reasons set forth above, Plaintiff respectfully asks the Court to preliminarily approve the Amended Settlement Agreement and Notice and authorize the Settlement Administrator to send to the Settlement Class the proposed Notice.

DATED: April 14, 2020                    KINGSLEY & KINGSLEY, APC


By: /s/ Kelsey M. Szamet
    Kelsey M. Szamet
    Attorney for Plaintiff
    Paniani Taafua and the Proposed Class

**RENEWED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**