UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| PANIANI TAAFUA,<br><br>    Plaintiff,<br><br>v.<br><br>QUANTUM GLOBAL TECHNOLOGIES, LLC,<br><br>    Defendant. | Case No. 18-cv-06602-VKD<br><br>**ORDER GRANTING RENEWED MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT**<br><br>Re: Dkt. No. 49 |

The Court previously denied preliminary approval of a proposed class action settlement agreement in this case that contemplated a release of claims in return for a total payment of $125,902. Dkt. No. 41. The parties subsequently agreed to an amended settlement that provides for payment of $174,980 and a modified proposed distribution of those funds. Mr. Taafua now renews his motion for preliminary approval of the settlement. Defendant Quantum Global Technologies ("QGT") has not opposed the motion, and the matter was deemed submitted without oral argument. Dkt. No. 51. Based on the current record, the Court concludes that the new settlement agreement is fair, reasonable, and adequate within the meaning of Rule 23(e)(2). Accordingly, the motion for preliminary approval is granted.

I.  **BACKGROUND**

Mr. Taafua filed this action for himself, and on behalf of a putative class, for alleged violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681b(b)(2)(A)(i)-(ii), based on a disclosure form used by QGT, his former employer, that reportedly included an extraneous liability waiver. Mr. Taafua claims that QGT required him, and all prospective employees, to sign a standard company form authorizing QGT to obtain a consumer report from third party First

1   Contact HR to verify an applicant's background and experience.  Mr. Taafua contends that
2   because QGT's form included a liability waiver, in addition to a disclosure concerning a consumer
3   report, QGT violated the FCRA's stand-alone disclosure requirement, and as a result, QGT also
4   never received proper authorizations for any reports it obtained using its standard form.  Mr.
5   Taafua further alleges that he "was confused by the standard disclosure and authorization form and
6   did not understand that [QGT] would be requesting a consumer report as defined in the FCRA."
7   Dkt. No. 1 ¶ 10.  He goes on to allege that "[n]onetheless, upon information and belief, [QGT]
8   then secured a consumer report from First Contact HR."  *Id*.

9   Several months after this Court held an initial case management conference, and before a
10  noticed hearing on QGT's then-pending motion to transfer venue, the parties settled.  The
11  settlement covered the period October 30, 2013 to December 31, 2018, on behalf of the following
12  class:

> all individuals who applied for employment with and/or were employed by Defendant in the United States and were the subject of a consumer report that was procured by Defendant or caused to be procured by Defendant through third-party consumer reporting agency First Contact HR during the Class Period.

16  Dkt. No. 34-2, Section I.2.  The proposed settlement was non-reversionary and essentially
17  contemplated a release of claims in return for a total payment of $125,902 ("Global Settlement
18  Fund"), from which $16,000 in estimated administrator expenses, $41,967.33 in attorney's fees,
19  $3,000 in costs, and a $5,000 service award would be deducted before the remaining $59,934.67
20  was distributed to a class of 1,041 members based on an estimated 1,476 reports obtained during
21  the class period.  Dkt. No. 34-2.  An individual class member could be entitled to more or less
22  money depending on the number of reports that were obtained for that individual.  The Court
23  found no issue with certain aspects of the settlement, including the class definition, the scope of
24  the release and the proposed *cy pres* award of unclaimed funds to the Education Fund of the
25  National Association of Consumer Advocates ("NACA").  Dkt. No. 41.  Nevertheless, the Court
26  denied Mr. Taafua's motion for preliminary approval of the settlement, concluding that he did not
27  demonstrate that Rule 23 class certification is warranted or that the proposed settlement was fair,
28  reasonable and adequate.  The Court's primary concern was that the proposed settlement appeared

2

1  to account for QGT's potential statute of limitations defense with respect to Mr. Taafua's claims,
2  at the expense of approximately half of the putative class members who have no such issue. The
3  Court also expressed concern that the requested fees for Mr. Taafua's counsel comprised over
4  33% of the total settlement, and thus exceeded the 25% benchmark used in the Ninth Circuit.
5  Further, the Court noted that Mr. Taafua had not provided sufficient support for the requested
6  $5,000 service award. *Id*.

7         The parties have now agreed to an amended settlement, and Mr. Taafua moves for
8  preliminary approval of the amended settlement terms. Dkt. No. 49. Several aspects of the
9  amended settlement are unchanged from the prior proposed agreement. The class definition, class
10 period, estimated class size, estimated number of procured consumer reports, and the scope of the
11 release remain the same. Perhaps most notably, the Global Settlement Fund has increased to
12 $174,980. With respect to the distribution of those funds, the estimated administrator costs
13 ($16,000) remain the same, as do the fees sought by Mr. Taafua's counsel ($41,967.33), with the
14 result that the requested fees now amount to approximately 24% of the Global Settlement Fund.
15 Additionally, counsel's requested costs have decreased to $2,200, and the service award sought for
16 Mr. Taafua has been lowered to $3,500. As for the remaining funds, $111,312.67 ("Net
17 Settlement Fund"), the amended settlement contemplates that 13% will be distributed to class
18 members whose claims fall outside the two-year statute of limitations period and 87% will be
19 distributed among those whose claims are unquestionably timely. An individual class member
20 may be entitled to more or less money depending on the number of reports that were obtained for
21 that individual and the period of time when the report(s) were procured. As with the prior
22 agreement, the amended settlement is non-reversionary, with any unclaimed funds to be given as a
23 *cy pres* award to NACA. Dkt. No. 49-3.

24        For the reasons discussed below, the Court grants Mr. Taafua's motion for preliminary
25 approval of the settlement and orders that notice be given to the class.

26 **II.   LEGAL STANDARD**
27        Court approval is required for the settlement of Rule 23 class actions. *See* Fed. R. Civ. P.
28 23(e) ("The claims, issues, or defenses of a certified class—or a class proposed to be certified for

purposes of settlement—may be settled, voluntarily dismissed, or compromised only with the court's approval."). The Ninth Circuit has declared that a strong judicial policy favors settlement of Rule 23 class actions. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). However, no broad presumption of fairness applies to such settlements. *Roes v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1049 (9th Cir. 2019). And where the parties reach a settlement before class certification, courts must "employ[] extra caution and more rigorous scrutiny," *id.*, and "peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement," *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003); *see also In re Bluetooth Headset Products Liability Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) ("Prior to formal class certification, there is an even greater potential for a breach of fiduciary duty owed the class during settlement. Accordingly, such agreements must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair.").

First the Court must assess whether a class exists. *Staton*, 327 F.3d at 952. Second, the Court must assess whether the proposed settlement is "fundamentally fair, adequate, and reasonable," considering "the settlement taken as a whole, rather than the individual component parts, that must be examined." *Id*. (internal quotations and citation omitted).

## III. DISCUSSION

Mr. Taafua bears the burden of establishing, by a preponderance of the evidence, that class certification is appropriate under Rule 23. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) ("A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc."). Class certification under Rule 23 requires two steps. First, Mr. Taafua must satisfy the four prerequisites under Rule 23(a), namely numerosity, commonality, typicality and adequacy of representation. *Id*. at 349. Additionally, Mr. Taafua must show that at least one of the bases for certification under Rule 23(b) is met. *Amchem. Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997). Mr. Taafua seeks certification under Rule 23(b)(3) and therefore must show that "questions of law or fact common to class members

4

predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

### 1. Rule 23(a) Certification

#### a. Numerosity and Commonality

In its order on Mr. Taafua's initial motion for preliminary approval of the settlement, the Court found that the numerosity and commonality requirements were satisfied. Dkt. No. 41. The Court finds no basis on the present motion to revisit its prior analysis and conclusion.

#### b. Typicality

Rule 23(a) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class," and the "test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (quotations and citations omitted). The typicality requirement is satisfied where representative claims "are reasonably coextensive with those of absent class members; they need not be substantially identical." *Staton*, 327 F.3d at 957 (internal quotations and citation omitted). However, "class certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation." *Hanon*, 976 F.2d at 508 (internal quotations and citation omitted).

While the Court may not "engage in free-ranging merits inquiries at the certification stage," merits questions may be considered to the extent "that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, 568 U.S. 455, 466 (2013) (citing *Dukes*, 564 U.S. at 350-51 and n.6). The Court previously found that Mr. Taafua's claims are typical of the class insofar as QGT is alleged to have procured one or more consumer reports for each putative class member, after having provided the class member with a disclosure form that contained an extraneous liability

waiver. Dkt. No. 41 at 11. Nevertheless, the Court concluded that the typicality requirement was not met in view of a potential statute of limitations defense affecting the claims of Mr. Taafua and approximately half the class, but not those of the remaining putative class members. *Id*. at 11-14.

In his renewed motion for approval, Mr. Taafua notes that his overall theory is that due to the presence of an extraneous liability waiver, he and putative class members did not understand or were not aware that they were authorizing QGT to obtain a consumer report. *See Syed v. M-I, LLC*, 853 F.3d 492, 502 (9th Cir. 2017) ("An authorization requiring the job applicant's signature focuses the applicant's attention on the nature of the personal information the prospective employer may obtain, and the employer's inability to obtain that information without his consent. But a liability waiver does just the opposite—it pulls the applicant's attention away from his privacy rights protected by the FCRA by calling his attention to the rights he must forego if he signs the document."). Moreover, as discussed above, the proposed modifications to distribution of the settlement funds address the Court's primary concerns and indicate that the settlement has not been reached at the expense of class members with unquestionably timely claims. At this time, the Court is satisfied that the typicality requirement for class certification is met.

### c. Adequacy of Representation

For much the same reasons, the Court also concludes that the parties' amended settlement satisfies the requirement for adequacy of representation. Rule 23(a) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). In assessing this factor, the Court addresses two legal issues, i.e., whether Mr. Taafua and his counsel (1) have any conflicts of interest with other class members, and (2) will prosecute the action vigorously on behalf of the class. *Staton*, 327 F.3d at 957.

The Court previously found no reason to question the competence or experience of Mr. Taafua's counsel. Dkt. No. 41 at 15. On the record presented, the Court finds no basis to revisit that conclusion. While the Court previously noted that, based on the potential statute of limitations defense, the interests of the class as a whole may not have been sufficiently addressed by the prior proposed settlement, the parties' amended settlement amply addresses those concerns for the reasons discussed above. Accordingly, the Court preliminarily finds that Mr. Taafua and

his counsel can adequately represent the class.

### 2. Rule 23(b)(3) Certification

Mr. Taafua seeks to certify the proposed class under Rule 23(b)(3), which requires that "the questions of law or fact common to class members predominate over any questions affecting only individual members" and "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Having previously concluded that the superiority requirement is satisfied (Dkt. No. 41 at 15-16), the Court finds no reason on the record presented to revisit that conclusion. As for predominance, the Court preliminarily finds that that requirement is also satisfied. As discussed above, Mr. Taafua emphasizes that the overall theory of this case is that due to QGT's allegedly unlawful disclosure form, neither he nor any of the putative class members were aware that they were authorizing the procurement of a consumer report. Additionally, the parties' settlement now accounts for difference in risks among the class members regarding the potential statute of limitations defense.

In sum, for purposes of settlement, the Court concludes that provisional certification of a Rule 23 class is appropriate.

### B. Preliminary Approval of Settlement

Courts employ a two-step process in evaluating class action settlements. First, if the parties show "that the court will likely be able to . . . approve the proposal under Rule 23(e)(2)," courts preliminarily approve the settlement and authorize notice to the class. Fed. R. Civ. P. 23(e)(1)(B)(i). Second, courts conduct a hearing to make a final determination whether a settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). On Mr. Taafua's present motion, this Court must therefore make a preliminary determination that the settlement "is fair, reasonable, and adequate" when considering the factors set out in Rule 23(e)(2).

In making that determination, district courts consider several factors, including:

> the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Hanlon.*, 150 F.3d at 1026. The 2018 amendments to Rule 23 require the Court to consider a similar list of factors before approving a settlement, including whether:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
>> (i) the costs, risks, and delay of trial and appeal;
>>
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>>
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>>
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). This list of factors is not intended to displace any factors currently considered by courts, "but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Fed. R. Civ. P. 23(e) Advisory Comm. Note (2018). The overall purpose of Rule 23(e) is to ensure that class representatives and their counsel do not obtain a disproportionate benefit at the expense of the unnamed class members, who class counsel have a duty to represent. *SFBSC Mgmt., LLC*, 944 F.3d at 1049.

Within this framework, courts have preliminarily approved a Rule 23 class action settlement and ordered notice to the class if the proposed settlement (1) appears to be the product of serious, informed, non-collusive negotiations; (2) does not grant improper preferential treatment to class representatives or other segments of the class; (3) falls within the range of possible approval; and (4) has no obvious deficiencies. *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007); *see also Nen Thio v. Genji, LLC*, 14 F. Supp. 3d 1324, 1333 (N.D. Cal. 2014). However, while "rigorous inquiry at the initial stage" should not "convert final review to a mere formality," courts have rejected the proposition that "district courts should conduct a

8

more lax inquiry at the preliminary approval stage[.]" *Cotter v. Lyft, Inc.*, 193 F.Supp.3d 1030, 1036 (N.D. Cal. 2016).

In determining whether a proposed settlement is fair, the Court must apply "an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e)." *In re Bluetooth*, 654 F.3d at 946. Additionally, courts "must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *Id*. at 947. Such signs include (1) class counsel's receipt of a disproportionate distribution of the settlement, (2) a "clear sailing" agreement "providing for the payment of attorneys' fees separate and apart from class funds, which carries the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class"; and (3) an arrangement whereby fees that are not awarded are reverted to the defendants, rather than added to the class fund. *Id*.

### 1. Strength of Mr. Taafua's Case, Risks of Litigation and the Amount in Settlement

With respect to the first four *Hanlon* factors, in denying Mr. Taafua's initial motion for preliminary approval of the settlement, the Court's main concern was that, in view of relatively recent Ninth Circuit authority including *Syed*, Mr. Taafua had overstated certain risks of continued litigation, and that the prior settlement took statute of limitations issues into account at the expense of class members whose claims indisputably are timely. Relatedly, the Court noted that Mr. Taafua's prior estimates of an individual's potential recovery were inflated and based on the number of class members, rather than the number of reports procured as required by the parties' agreement. In sum, it appeared that the potential weakness of Mr. Taafua's claims with respect to the statute of limitations may have resulted in a smaller recovery for the class as a whole, even though approximately half the class's claims present no timing issues. Dkt. No. 41 at 19-21.

The parties' amended settlement agreement adequately addresses the concerns expressed in the Court's prior ruling. The Global Settlement Fund has increased nearly $50,000, while estimated administrative expenses remain the same, Mr. Taafua's counsel have lowered their

9

1  requested costs and seek fees no greater than those sought in the original settlement agreement,
2  and Mr. Taafua now seeks a lower service award. The result is an increased Net Settlement Fund
3  of $111,312.67 available for distribution to the class.
4        For a willful violation of the FCRA, a plaintiff may recover statutory damages of between
5  $100 and $1,000. 15 U.S.C. § 1681n. As discussed above, the proposed distribution now reflects
6  relative risks of the statute of limitations and differentiates between claims outside the two-year
7  limitations period and those that unquestionably are timely. To that end, the settlement proposes
8  that 87% of the Net Settlement Fund will be allocated to claims arising from consumer reports that
9  QGT procured or caused to be procured for class members from October 30, 2016 through
10 December 31, 2018. Based on the 777 reports estimated to have been pulled during this period,
11 recovery is expected to be approximately $124.64 per report. Thirteen percent of the Net
12 Settlement Fund will be allocated to claims arising from consumer reports that QGT procured or
13 caused to be procured from October 30, 2013 through October 29, 2016. Based on an estimated
14 699 reports obtained during this period, the estimated recovery is approximately $20.70 per
15 consumer report. Dkt. No. 49-3, Section III. ¶ 3. Mr. Taafua acknowledges that settlements in
16 similar cases are based on the number of settlement class members, rather than the number of
17 reports obtained, and he notes that sums from other cited cases focus on payments for two-year
18 FCRA classes. Even so, sums proposed by the parties' amended settlement appear to be
19 comparable to awards approved in other cases concerning FCRA's stand-alone disclosure
20 requirement. Dkt. Nos. 49-1, 50.[1] Here, recovery for indisputably timely claims is expected to
21 exceed the $100 statutory minimum per report. While claims outside the two-year limitations
22 period will be paid below the statutory minimum, that discount appropriately reflects the risks of
23 proceeding in litigation with a potentially untimely claim *See generally Schofield v. Delta Air*
24 *Lines, Inc.*, No. 18-cv-00382-EMC, 2019 WL 955288 (N.D. Cal. Feb. 27, 2019) (approving a
25 settlement with a proposed distribution of funds that differentiated between class members whose
26 claims were filed within the two-year limitations period and those whose claims were not). In any

---

[1] The Court takes judicial notice of the pleadings and orders filed in other actions. Fed. R. Evid. 201.

10

event, "[t]he fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) (internal quotations and citation omitted).

Moreover, class members who participate in the settlement may avoid the costs and delays of proceeding to a trial, and will not need to make a claim or do anything to receive a payment. If the settlement is approved, QGT will deposit the settlement sums into a fund to be managed by third-party claims administrator JND Legal Administration, which will mail settlement checks to each participating class member. Dkt. No. 49-3. There will be no reversion to QGT. Considering the potential risks and costs of proceeding to trial, as well as the relative ease with which class members may receive their funds, at this stage the Court is satisfied that the settlement consideration is adequate.

### 2. Stage of Proceedings and Settlement Negotiations

As noted in the Court's order on Mr. Taafua's prior motion for approval of settlement, the Court finds no reason to conclude that the relatively quick settlement of this matter was due to lack of vigorous representation. The facts underlying Mr. Taafua's claims are straightforward. Mr. Taafua's counsel avers that the proposed settlement is the product of the parties' arms-length direct negotiations and "extensive discussions about their respective positions and the information and data needed to properly evaluate the merits of the claims alleged." Dkt. No. 49-2 ¶ 6. Both sides in this matter are represented by experienced counsel, and there is no evidence suggesting that Mr. Taafua was inadequately prepared for the settlement discussions. *See Linney*, 151 F.3d at 1239 ("In the context of class action settlements, 'formal discovery is not a necessary ticket to the bargaining table' where the parties have sufficient information to make an informed decision about settlement.") (citation omitted).

### 3. Counsel's Requested Fees

Because the proposed settlement was negotiated prior to formal class certification, "there is an even greater potential for a breach of fiduciary duty owed the class during settlement." *In re Bluetooth*, 654 F.3d at 946. "Accordingly, such agreements must withstand an even higher level

11

of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair." *Id*. As noted above, courts consider whether there are "subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *Id*. at 947. Several such signs are: (1) "when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded; (2) "when the parties negotiate a 'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds"; and (3) "when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund." *Id*.

The proposed amended settlement does not include a "clear sailing" agreement and is fully non-reversionary with all unclaimed funds to be given as a *cy pres* award to NACA. Dkt. No. 49-3. The Court previously expressed concerns about Mr. Taafua's counsel's request for fees of 33.33% of the total settlement, as well as their arguments favoring distribution as a percentage of the common fund, rather than payment based on a lodestar method. However, as discussed above, counsel's requested fees of $41,967.33 are now less than 25% of the proposed total settlement, and counsel avers that the requested sum is also below counsel's current lodestar of $64,612. Dkt. No. 49-2 ¶¶ 28-30. Although the Court need not, at this time, finally resolve the amount of any fees to be awarded, on the record presented it is satisfied that Mr. Taafua's requested fees and costs do not warrant denying preliminary approval.

### 4. Experience and Views of Counsel

As noted above, the Court currently is satisfied that counsel meet the adequacy requirement and finds no basis on the present record to question the competence of Mr. Taafua's counsel, who aver that they have considerable experience in consumer litigation and believe that the proposed settlement is fair and reasonable. Dkt. No. 49-2 ¶ 31.

### 5. Presence of a Government Participant

A court may not grant final approval of a class action settlement until the Class Action Fairness Act ("CAFA") notice requirement is met. 28 U.S.C. § 1715(d) ("An order giving final approval of a proposed settlement may not be issued earlier than 90 days after the later of the dates

on which the appropriate Federal official and the appropriate State official are served with the notice required under subsection (b)."). Here, Mr. Taafua's motion indicates that QGT will have provided the required CAFA notice no later than April 24, 2020. Dkt. No. 49 at 32 n.22.

### 6. Reaction of the Class Members to the Proposed Settlement

The class members' reaction will be best addressed at the final approval hearing, by which time the Court will have information regarding how many class members have opted out or object to the proposed settlement.

### 7. Equitable Treatment of Class Members Relative to Others

In assessing whether "the proposal treats class members equitably relative to each other," Fed. R. Civ. P. 23(e)(2)(D), the Court considers whether the proposed settlement "improperly grant[s] preferential treatment to class representatives or segments of the class . . . ." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1079 (internal quotations and citation omitted).

#### a. Proposed Distribution

Under the proposed amended settlement, each class member who remains in the settlement class will receive payment from the Net Settlement Fund based on the number of consumer reports that QGT procured for that individual. Allocating the Net Settlement Fund on a *pro rata* basis in this manner is equitable and fair. Additionally, for the reasons discussed above, the Court is satisfied that the proposed greater allocation of funds for indisputably timely claims fairly reflects the risks of statute of limitations issues.

#### b. Service Award

While service awards are permissible, they must also be reasonable. *Staton*, 327 F.3d at 977. Courts must evaluate such awards individually, using "relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonabl[e] fear[s of] workplace retaliation." *Id.* (internal quotations and citation omitted). Courts in this district have recognized that a $5,000 service award, as a general matter, is a reasonable amount. *See Schofield*, 2019 WL 955288 at *7.

As discussed above, the Court previously noted that Mr. Taafua's prior requested $5,000

service award does not, by itself, indicate that he failed to settle this matter in the best interests of the entire class. Dkt. No. 41 at 23. Nevertheless, the Court found that he "provide[d] minimal explanation, in conclusory fashion, for the requested award." *Id*. at 24. On the present motion, Mr. Taafua has not provided any additional justification for a service award, and his counsel reiterates that he spent time compiling documents and meeting with his attorneys, and incurred personal risks of potentially being responsible for QGT's costs and having potential employment adversely affected by his public prosecution of this action. Dkt. No. 49-2 ¶¶ 33-34. Additionally, to the extent the amended settlement agreement suggests that the requested service award is also meant to compensate Mr. Taafua for his execution of a general release (Dkt. No. 49-3, Section III.8), that is not a purpose for which service awards are intended. *See SFBSC Mgmt., LLC*, 944 F.3d at 1046-47. Nevertheless, as noted above, Mr. Taafua now requests a smaller sum of $3,500. While that sum is still subject to the Court's final approval, at this time, Mr. Taafua's requested service award does not warrant denying preliminary approval inasmuch as it is within sums that courts in this district consider reasonable.

### 8. Notice

As with the parties' prior proposed settlement, the Court finds that the proposed notice of settlement to be sent to class members "clearly and concisely state[s] in plain, easily understood language" the nature of the action, the class definition, and the class members' right to exclude themselves from the class. Fed. R. Civ. P. 23(c)(2)(B). The Court previously requested clarification whether the proposed notice procedures are fair and adequate in view of recent Ninth Circuit authority. *See SFBSC Mgmt., LLC*, 944 F.3d at 1049. For present purposes, absent any indication that class members will be difficult to reach by mail, and given that class members who remain in the settlement class need not take any action to receive their allotted settlement funds, the Court is satisfied that the parties' proposed notice of settlement is adequate.

## IV. CONCLUSION

Considering the risks, expense and delay Mr. Taafua and class members would face in proceeding to trial, together with the value of all of the claims being released and the value of the proposed settlement to the class members, the Court preliminarily concludes that the settlement,

on the current record, is "fair, reasonable, and adequate" within the meaning of Rule 23(e)(2), such that it is appropriate to send notice to the class.

## V. ORDER

Based on the foregoing and the parties' Amended Class Action Release and Settlement Agreement ("Settlement Agreement"), the Court orders as follows:

1. For purposes of this Order, the Court adopts and incorporates all definitions set forth in the Settlement Agreement unless a different definition is set forth in this Order.

2. The Court finds, preliminarily and for purposes of this settlement only, that the requirements of Rule 23 of the Federal Rules of Civil Procedure and other laws and rules applicable to preliminary settlement approval of class actions have been satisfied in that: (a) the number of Settlement Class Members is so numerous that joinder of all members of the Settlement Class is impracticable; (b) there are questions of law or fact common to the Settlement Class Members that predominate over any individual questions; (c) the claims of Mr. Taafua are typical of the claims of the Settlement Class he seeks to represent; (d) Mr. Taafua fairly and adequately represents the interests of the Settlement Class; and (e) a class action is superior to other available methods for the fair and efficient adjudication of the Action.

3. The Court preliminarily approves the settlement of this Action as memorialized in the Settlement Agreement, which is incorporated herein by this reference, subject to further consideration at the Final Approval Hearing described below, and thus hereby:

    a. Conditionally certifies, for purposes of implementing the Settlement Agreement, the following settlement class: "All individuals who applied for employment with and/or were employed by Quantum Global Technologies, LLC in the United States and who were the subject of a consumer report that was procured by Quantum Global or caused to be procured by Quantum Global through third-party consumer reporting agency First Contact HR during the Class Period of October 30, 2013 through December 31, 2018." (the "Settlement Class").

    b.  Appoints Mr. Taafua as the representative of the Settlement Class.

    c.  Appoints Eric B. Kingsley and Kelsey M. Szamet of Kingsley & Kingsley APC and Emil Davtyan of Davtyan Professional Law Corporation as attorneys for the Settlement Class for purposes of settlement and finds for the purposes of settlement that these attorneys are qualified to represent the Settlement Class.

4. The Court approves, as to form and content, the Settlement Agreement.  The Court finds that: (a) the Settlement Agreement resulted from good faith, arms-length negotiations; and (b) the Settlement Agreement is sufficiently fair, just, reasonable, and adequate to the Class Members to warrant providing notice of the settlement to Class Members and holding a Final Approval Hearing.

5. The Final Approval Hearing shall be held on February 16, 2021, at 10:00 a.m. before the Honorable Virginia K. DeMarchi, in Courtroom 2, 5th Floor, of the United States District Court for the Northern District of California, located at the San Jose Federal Courthouse, 280 South 1st Street, San Jose, California 95113.[2]  At that time, the Court shall determine: (a) whether the proposed settlement of the Action on the terms and conditions provided for in the Settlement Agreement is fair, just, reasonable, and adequate and should be finally approved; (b) whether judgment as provided in the Settlement Agreement should be entered herein; and (c) whether to approve the proposed distribution formula as a fair and reasonable method to allocate the Net Settlement Amount among the Settlement Class.  The Court may continue or adjourn the Final Approval Hearing without further notice to members of the Settlement Class.

6. The Court approves, as to form and content, the Notice of Class Action Settlement (the Notice") attached to the Settlement Agreement.  The Court finds that distribution of the Notice in the manner set forth in the Settlement Agreement constitutes the best notice practicable and is valid, due, and sufficient notice to all members of the Settlement Class, complying fully with the requirements of Rule 23 of the Federal Rules of Civil

---

[2] Depending on the then-current status of the COVID-19 public health emergency, the Final Approval Hearing may be conducted via Zoom.

16

Procedure, the Constitution of the United States, and any other applicable laws.

7. The Court approves the selection of JND Legal Administration to be the Settlement Administrator. The Settlement Administrator will administer the applicable provisions of the Settlement Agreement, including, but not limited to, mailing the Notice to each class member and distributing settlement payments to Settlement Class Members as specifically set forth in the Settlement Agreement.

8. The Procedures set forth in the Settlement Agreement to "Opt Out" and Object are fair and reasonable, as are the deadlines set forth.

9. All Settlement Class Members shall be bound by all determinations and judgments in this Action concerning the settlement, unless such person requests exclusion from the Settlement Class in a timely manner and in accordance with the terms of the Settlement Agreement.

10. All papers in support of final approval of the Settlement Agreement and the application for attorneys' fees or expenses shall be filed and served no later than thirty-five (35) calendar days prior to the Final Approval Hearing.

11. Defendant, its counsel, and the Released Parties shall have no responsibility or liability with respect to any application for attorneys' fees or expenses submitted by Class Counsel or for a service award to Mr. Taafua, and the Court's determination as to the fees (if any) to be awarded will not be a basis for nullification of the settlement.

12. Neither the Settlement Agreement, nor any of its terms or provisions, nor any of the negotiations or proceedings connected with it, shall be construed as an admission or concession by Defendant or any of the Released Parties of the truth of any of the allegations in the Action, or of any liability, fault, or wrongdoing of any kind. Further, neither the Settlement Agreement, nor any of its terms or provisions, nor any of the negotiations or proceedings connected with it, nor this Order shall be construed as an admission or concession by Mr. Taafua of the validity of any factual or legal defense or of any infirmity in any of the claims or facts alleged in this Action.

13. The Parties may elect to terminate this settlement only as provided in the Settlement

Agreement. In such event, or in the event the settlement does not become effective in accordance with the terms of the Settlement Agreement or the Effective Date does not occur, then the Settlement Agreement shall be rendered null and void, of no further force or effect, and without prejudice to any party, and may not be introduced as evidence or used in any action or proceeding by any person against the Parties or the Releasees, and each shall be restored to his, her, or its respective litigation positions as they existed prior to the execution of the Settlement Agreement.

14. Pending final determination of whether the settlement should be approved, all Settlement Class Members and each of them, and anyone acting or purporting to act for any of them, shall be enjoined from prosecuting, attempting to prosecute, or assisting in the prosecution of, any settled claims, as set forth in the Settlement Agreement. In addition, all previously scheduled deadlines and appearances, including the final pretrial conference and trial, are vacated.

15. The Court reserves the right to adjourn the date of the Final Approval Hearing and any adjournment thereof without further notice to the members of the Settlement Class, and retains jurisdiction to consider all further applications arising out of or connected with the Settlement Agreement. The Court may approve the settlement, with such modifications as may be agreed to by the Parties, if appropriate, without further notice to the Settlement Class Members.

**IT IS SO ORDERED.**

Dated: August 14, 2020

VIRGINIA K. DEMARCHI
United States Magistrate Judge