UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| PANIANI TAAFUA,<br><br>   Plaintiff,<br><br>   v.<br><br>QUANTUM GLOBAL TECHNOLOGIES, LLC,<br><br>   Defendant. | Case No. 18-cv-06602-VKD<br><br>**ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND GRANTING MOTION FOR ATTORNEYS' FEES AND COSTS**<br><br>Re: Dkt. No. 53 |

## I.   BACKGROUND

Plaintiff Paniani Taafua filed this action for himself, and on behalf of a putative class, for alleged violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681b(b)(2)(A)(i)-(ii), based on a disclosure form used by his former employer, Quantum Global Technologies, LLC ("QGT"), that reportedly included an extraneous liability waiver. Mr. Taafua claims that QGT required him, and all prospective employees, to sign a standard company form authorizing QGT to obtain a consumer report from third party First Contact HR to verify an applicant's background and experience. Mr. Taafua contends that because QGT's form included a liability waiver, in addition to a disclosure concerning a consumer report, QGT violated the FCRA's stand-alone disclosure requirement, and as a result, QGT also never received proper authorizations for any reports it obtained using its standard form. Mr. Taafua claims that he "was confused by the standard disclosure and authorization form and did not understand that [QGT] would be requesting a consumer report as defined in the FCRA." Dkt. No. 1 ¶ 10. He further alleges that "[n]onetheless, upon information and belief, [QGT] then secured a consumer report from First Contact HR." *Id.*

Several months after this Court held an initial case management conference, and before a noticed hearing on QGT's then-pending motion to transfer venue, the parties settled.

The Court previously denied preliminary approval of a proposed class action settlement agreement that contemplated a release of claims in return for a total payment of $125,902. Although the Court found no issue with certain aspects of the settlement, including the class definition, the scope of the release and the proposed *cy pres* award, Mr. Taafua's motion for preliminary approval was denied because the proposed settlement appeared to account for QGT's potential statute of limitations defense with respect to Mr. Taafua's claims, at the expense of approximately half of the putative class members who have no such issue. The Court also expressed concern that the requested fees for Mr. Taafua's counsel comprised over 33% of the total settlement, and thus exceeded the 25% benchmark used in the Ninth Circuit. Further, the Court noted that Mr. Taafua had not provided sufficient support for the requested $5,000 service award. Dkt. No. 41.

The parties subsequently agreed to an Amended Class Action Release and Settlement Agreement ("Amended Settlement Agreement") that provides for payment of $174,980 and a modified proposed distribution of those funds. On August 14, 2020, the Court preliminarily approved the amended settlement, conditionally certified a Rule 23 class action, ordered notice to be given to the class, and set a final fairness hearing for February 16, 2021. Dkt. No. 52.

The proposed amended settlement covers the period October 30, 2013 to December 31, 2018, on behalf of the following class:

> all individuals who applied for employment with and/or were employed by Defendant in the United States and were the subject of a consumer report that was procured by Defendant or caused to be procured by Defendant through third-party consumer reporting agency First Contact HR during the Class Period.

Dkt. No. 53-3, Section I.2. The settlement is non-reversionary and contemplates a release of claims[1] in return for a total payment of $174,980 ("Global Settlement Fund"), from which

---

[1] The release remains the same as that in the original settlement.

$15,592[2] in estimated administrator expenses, $41,967.33 in attorney's fees, $1,993.72[3] in costs, and a $3,500 service award will be deducted before the remaining $111,926.95[4] ("Net Settlement Fund") is distributed to the class, which has 1,040 members. *See id*., Section III.3, 8., 12., 13.; *see also* Dkt. No. 53-1 at 4, 5 n.3; Dkt. No. 53-2 ¶ 14. The settlement contemplates that 13% of the Net Settlement Fund will be distributed to class members whose claims fall outside the two-year statute of limitations period[5] and 87% will be distributed among those whose claims are unquestionably timely. Individual payments will be made on a pro rata basis, depending on the number of reports that were obtained for a given class member. Dkt. No. 53-3, Section III.3. Any unclaimed funds will be given as a *cy pres* award to the Education Fund of the National Association of Consumer Advocates ("NACA"). *Id*., Section III.11.

Mr. Taafua reports that pursuant to the terms of the Amended Settlement Agreement, the settlement administrator, JND Legal Administration ("JND"), sent notice to all 1,040 class members identified by QGT. Dkt. No. 53-9 ¶ 4. Based on JND's report, it appears that ultimately nine notices were returned as undeliverable, with no forwarding address and for which JND was not able to obtain updated address information. *Id*. ¶¶ 6-7. JND states that as of January 8, 2021, it received no objections to the settlement and only two requests for exclusion. *Id*. ¶¶ 12, 14. Thus, it appears that there is a total settlement class of 1,038 individuals, of whom 1,029 are presumed to have successfully received notice of the settlement.

An individual class member may be entitled to more or less money depending on the number of reports that were obtained for that individual and the period of time when the report(s) were procured. Dkt. No. 53-3, Section III.4. JND estimates that the average settlement payment

---

[2] This sum is lower than the previously estimated administrator expenses of $16,000.

[3] This sum is lower than Mr. Taafua's counsel's previously estimated costs of $2,200.

[4] Mr. Taafua's counsel explain that because their requested costs are lower than their original estimate of $2,200, the Net Settlement Fund will be slightly higher than the $111,720.67 anticipated by the settlement administrator. Dkt. No. 53-1 at 5 n.3; Dkt. No. 53-2 ¶ 14.

[5] The FCRA requires a plaintiff to bring his claims within "2 years after the date of discovery by the plaintiff of the violation that is the basis for such liability" or "5 years after the date on which the violation that is the basis for such liability occurs," whichever is earlier. 15 U.S.C. § 1681p.

is expected to be $107.10, with the lowest estimated payment being $20.70 and the highest estimated payment being $560.65. Dkt. No. 53-9 ¶¶ 20-22. These estimates apparently are based on a Net Settlement Fund of $111,720.67. *See id*. ¶ 19. As noted above, Mr. Taafua indicates that these numbers may be somewhat higher, inasmuch as the Net Settlement Fund will be slightly higher due to his counsel's lower-than-estimated costs.

Mr. Taafua now moves pursuant to Rule 23 for final approval of the proposed settlement, including payment of his service award, as well as his attorneys' fees and costs. QGT does not oppose Mr. Taafua's motion, and the Court has received no objections to the proposed settlement or counsel's requested fees and costs.[6] The Court held a final fairness hearing on February 16, 2021. Having considered the arguments of counsel and the papers submitted, the Court grants Mr. Taafua's motion for final approval of the class action settlement and grants his motion for his attorneys' fees and costs.[7]

## II.   LEGAL STANDARD

Court approval is required for the settlement of Rule 23 class actions. *See* Fed. R. Civ. P. 23(e) ("The claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled, voluntarily dismissed, or compromised only with the court's approval."). The Ninth Circuit has declared that a strong judicial policy favors settlement of Rule 23 class actions. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). However, no broad presumption of fairness applies to such settlements. *Roes v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1049 (9th Cir. 2019). And where the parties reach a settlement before class certification, courts must "employ[] extra caution and more rigorous scrutiny," *id*., and "peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the

---

[6] The Notice of Class Action Settlement directed class members who wished to object to file their objection with the Court, with a postmark deadline of November 17, 2020, and to provide a copy of their objection to the parties' attorneys and JND. Dkt. No. 53-3 at ECF 39-40; Dkt. No. 53-9 ¶ 13. As discussed above, JND confirms that it has received no objections, and there were no objections stated at the final fairness hearing.

[7] All parties have expressly consented that all proceedings in this matter may be heard and finally adjudicated by a magistrate judge. 28 U.S.C. § 636(c); Fed. R. Civ. P. 73; Dkt. Nos. 6, 9. The consent of absent class members is not required for this Court to exercise jurisdiction over this matter. *Koby v. ARS Nat'l Servs., Inc*., 846 F.3d 1071, 1076 (9th Cir. 2017).

1  settlement," *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003); *see also In re Bluetooth Headset Products Liability Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) ("Prior to formal class certification, there is an even greater potential for a breach of fiduciary duty owed the class during settlement. Accordingly, such agreements must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair.").

First the Court must assess whether a class exists. *Staton*, 327 F.3d at 952. Second, the Court must assess whether the proposed settlement is "fundamentally fair, adequate, and reasonable," considering "the settlement taken as a whole, rather than the individual component parts, that must be examined." *Id*. (internal quotations and citation omitted).

## III.  DISCUSSION

### A.  Final Class Certification

Mr. Taafua bears the burden of establishing, by a preponderance of the evidence, that class certification is appropriate under Rule 23. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) ("A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc."). Class certification under Rule 23 requires two steps. First, Mr. Taafua must satisfy the four prerequisites under Rule 23(a), namely numerosity, commonality, typicality and adequacy of representation. *Id*. at 349. Additionally, Mr. Taafua must show that at least one of the bases for certification under Rule 23(b) is met. *Amchem. Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997). Mr. Taafua seeks certification under Rule 23(b)(3) and therefore must show that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

#### 1.  Rule 23(a) Certification

In the Court's order granting preliminary approval of the settlement, the Court found that the putative class satisfied the numerosity, commonality, typicality, and adequacy of

representation requirements of Rule 23(a). Dkt. No. 52. Mr. Taafua's present motion for final approval does not indicate that there have been any changes that would require the Court to alter its prior analysis or conclusions, and the parties did not indicate at the fairness hearing that any such developments had occurred. Thus, the Court concludes that all four of Rule 23(a)'s requirements have been met.

### 2. Rule 23(b)(3) Certification

In the Court's order granting preliminary approval of the settlement, the Court found that the superiority and predominance requirements were satisfied. Dkt. No. 52. Mr. Taafua's present motion for final approval does not indicate that there have been any changes that would require the Court to alter its prior analysis or conclusions, and the parties did not indicate at the fairness hearing that any such developments had occurred. As noted above, neither JND nor the Court has received any objections by individual class members who claim to have an interest in controlling the prosecution of this action or any related actions.[8] The Court concludes that the Rule 23(b)(3) requirements for certification are met.

### 3. Rule 23(c)(2) Notice

If the Court certifies a class under Rule 23(b)(3), it "must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The rule governs both the form and content of a proposed notice and requires that the notice "clearly and concisely" state "the nature of the action," the "definition of the class certified," the "class claims, issues, or defenses," information about appearing and opting out, and "the binding effect of a class judgment on members." *Id*. The Ninth Circuit has held "that neither due process nor Rule 23's standard necessarily require actual notice," *SFBSC Mgmt.*, 944 F.3d at 1046 n.7, and parties are not required to implement all potential options in every case, *id*. at 1047. The notice "requirement is designed to ensure that class notice procedures comply with the demands of due process" and essentially means that the method of providing notice "'must be such as [a person] desirous of

---

[8] During the course of these proceedings, no one has identified any actions that are related to the present litigation.

6

actually informing the absentee might reasonably adopt to accomplish it.'" *Id.* at 1045-46 (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 338 U.S. 306, 315 (1950)).

As the Amended Settlement Agreement provides, JND says that it mailed notice of the settlement to the 1,040 class members identified by QGT. Dkt. No. 53-9 ¶ 4. Prior to mailing, JND says it updated the addresses for 144 class members using the U.S. Postal Service's National Change of Address database. *Id.* ¶ 5. After JND mailed the notices, two were returned to JND as undeliverable, with forwarding addresses, and JND says it promptly forwarded those two notices. *Id.* ¶ 6. Additionally, JND says that it tracked 68 notices that were returned as undeliverable, without a forwarding address. As to those notices, JND obtained updated address information for 59 class members and remailed the notice of settlement to them. *Id.* ¶ 7. Thus, it appears that ultimately there are nine class members for whom notices were returned as undeliverable and for whom no forwarding address information was obtained. At the final fairness hearing, the parties confirmed that JND did not receive any further forwarding addresses. Therefore, 1,029 class members, or approximately 99% of the class, are assumed to have received the notice of settlement. In light of these facts, the Court is satisfied that this system of providing notice was reasonably calculated to provide notice to class members and was the best form of notice available under the circumstances.

Further, the Court finds, as it did before, that the notice "clearly and concisely state[s] in plain, easily understood language" the nature of the action, the class definition, and the class members' right to exclude themselves from the class and the time and manner in which to request exclusion. Fed. R. Civ. P. 23(c)(2)(B).

In sum, because the settlement class satisfies Rules 23(a) and 23(b)(3), and the notice requirements of Rule 23(c)(2) have been met, the Court grants Mr. Taafua's motion for final class certification.

### B. Final Approval of Settlement

Having determined that class treatment is warranted, the Court now addresses whether the terms of the parties' proposed settlement is fair, adequate and reasonable under Rule 23(e). In making that determination, district courts consider several factors, including:

7

> the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998), *overruled on other grounds by Wal-Mart v. Dukes*, 564 U.S. 338 (2011). Rule 23 requires the Court to consider a similar list of factors before approving a settlement, including whether:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
>> (i) the costs, risks, and delay of trial and appeal;
>>
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>>
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>>
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). This list of factors is not intended to displace any factors currently considered by courts, "but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Fed. R. Civ. P. 23(e) Advisory Comm. Note (2018). The overall purpose of Rule 23(e) is to ensure that class representatives and their counsel do not obtain a disproportionate benefit at the expense of the unnamed class members, who class counsel have a duty to represent. *SFBSC Mgmt., LLC*, 944 F.3d at 1049.

In determining whether a proposed settlement is fair, the Court must apply "an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e)." *In re Bluetooth*, 654 F.3d at 946. Additionally, courts "must be particularly

1  vigilant not only for explicit collusion, but also for more subtle signs that class counsel have
2  allowed pursuit of their own self-interests and that of certain class members to infect the
3  negotiations." *Id*. at 947.  Such signs include (1) class counsel's receipt of a disproportionate
4  distribution of the settlement, (2) a "clear sailing" agreement "providing for the payment of
5  attorneys' fees separate and apart from class funds, which carries the potential of enabling a
6  defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an
7  unfair settlement on behalf of the class"; and (3) an arrangement whereby fees that are not
8  awarded are reverted to the defendants, rather than added to the class fund.  *Id*.

### 1. Strength of Mr. Taafua's Case; Risks, Expense, Complexity and Likely Duration of Litigation; and Maintaining Class Action Status

"In determining the settlement's fairness, the Court must balance against the risks of continued litigation, including the strengths and weaknesses of [p]laintiff's case, the benefits afforded to class members, and the immediacy and certainty of a recovery." *Ching v. Siemens Indus., Inc*., No. 11-cv-04838-MEJ, 2014 WL 2926210, at *4 (N.D. Cal. June 27, 2014).  "[T]here is no 'particular formula by which th[e] outcome must be tested.  Rather, the Court's assessment of the likelihood of success is 'nothing more than an amalgam of delicate balancing, gross approximations and rough justice.'"  *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 255 (N.D. Cal. 2015) (quoting *Rodriguez v. West Publishing Corp*., 563 F.3d 948, 965 (9th Cir. 2009)).  "Approval of a class settlement is appropriate when plaintiffs must overcome significant barriers to make their case."  *Der-Hacopian v. DarkTrace, Inc*., No. 18-cv-06726-HSG, 2020 WL 7260054, at *5 (N.D. Cal. Dec. 10, 2020) (citing *Chun-Hoon v. McKee Foods Corp*., 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010)).  "Additionally, difficulties and risks in litigating weigh in favor of approving a class settlement."  *Id*. (quoting *Rodriguez*, 563 F.3d at 966).  "'Generally, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results.'"  *Id*. (quoting *Ching*, 2014 WL 2926210, at *4).

The Court finds that the amount offered in settlement is reasonable in light of the risks Mr. Taafua would face in litigating this matter.  Most notably, Mr. Taafua states that QGT contends that its liability, if any, should be limited to individuals who can show they were actually confused

9

1  by the inclusion of a liability waiver in the disclosure form and would not have signed an

2  authorization but for inclusion of the waiver. *See* Dkt. No. 53-2 ¶ 29. Additionally, QGT has

3  taken the position that a number of class members necessarily were aware of the alleged FCRA

4  violation at the time they signed the authorization form, rendering their claims untimely. With

5  respect to Mr. Taafua, for example, QGT contends that its employment offer letter conditioned

6  employment on passing a background check, and he therefore knew or should have known, at least

7  several years prior to filing this suit, that QGT conducted a background check when he was hired

8  in 2015. While payments will vary for individual class members, and a given class member might

9  have received more if that individual proceeded to trial and prevailed on his or her claims, as

10  discussed above, such class members also face the added expense of proceeding through trial and

11  a risk that the litigation might result in a recovery substantially smaller than they claimed, or no

12  recovery at all. In reaching a settlement, Mr. Taafua has ensured an immediate and favorable

13  recovery for class members, who need not do anything in order to receive their payment. This

14  factor weighs in favor of approving the settlement.

### 2. Amount Offered in Settlement

16  "To evaluate adequacy, courts primarily consider plaintiffs' expected recovery balanced

17  against the value of the settlement offer." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078,

18  1080 (N.D. Cal. 2007).

19  For a willful violation of the FCRA, a plaintiff may recover damages between $100 and

20  $1,000. 15 U.S.C. § 1681n. Although Mr. Taafua initially estimated the maximum potential

21  value of all claims at $1,476,000, i.e., based on an estimated 1, 476 reports procured x $1,000

22  (Dkt. No. 49 at 28), he now states that the estimated maximum potential recovery is $2,080,000,

23  based on an assumption that the FCRA's disclosure and authorization requirements are deemed

24  separate violations. Dkt. No. 53-1 at 16 n.11; Dkt. No. 53-2 ¶ 42. As noted above, JND estimates

25  that the settlement payments to individual class members will range between $20.70 and $560.65,

26  with the estimated average payment of $107.10, and Mr. Taafua suggests that these figures may be

27  somewhat higher inasmuch as his counsel's lower estimated costs will result in a slightly higher

28  Net Settlement Fund for distribution to the class. Dkt. No. 53-9 ¶¶ 19-22; Dkt. No. 53-1 at 5 n.3;

Dkt. No. 53-2 ¶ 14. Thus, while some claims may be compensated at a rate lower than the statutory minimum, as discussed above, the distribution of the Net Settlement Fund is structured in a way that reflects relative risks of the statute of limitations and differentiates between claims outside the two-year limitations period and those that unquestionably are timely. *See generally Schofield v. Delta Air Lines, Inc.*, No. 18-cv-00382-EMC, 2019 WL 955288 (N.D. Cal. Feb. 27, 2019) (approving a settlement with a proposed distribution of funds that differentiated between class members whose claims were filed within the two-year limitations period and those whose claims were not). Moreover, "[t]he fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) (internal quotations and citation omitted). As noted, class members who participate in the settlement may avoid the costs and delays of proceeding to a trial, and will not need to make a claim or do anything to receive a payment. The Court finds that the proposed settlement amount falls within the range of reasonableness, considering the potential risks and costs of proceeding to trial,as well as the relative ease with which class members may receive their funds. This factor weighs in favor of approval of the settlement.

### 3. Stage of Proceedings and Settlement Negotiations

Although the parties settled relatively early in these proceedings, with little or no substantive litigation, the Court finds that class counsel had sufficient information to properly evaluate the merits of the claims and to make an informed decision about settlement. *See Linney*, 151 F.3d at 1239 ("In the context of class action settlements, 'formal discovery is not a necessary ticket to the bargaining table' where the parties have sufficient information to make an informed decision about settlement.") (citation omitted). Both sides in this matter are represented by experienced counsel. QGT informally produced Mr. Taafua's personnel file and the FCRA background form that he signed, and also provided estimates of the class size. Mr. Taafua's counsel states that the settlement is the result of this informal discovery, as well as discussions between the parties and their investigation of the claims. Dkt. No. 53-2 ¶¶ 46-48. Even after the Court denied Mr. Taafua's initial motion for preliminary approval of the settlement, the parties

continued their negotiations and ultimately reached a settlement that the Court concluded warranted notice to the class. This factor weighs in favor of approval of the settlement.

### 4. Requested Attorney's Fees

Because the proposed settlement was negotiated prior to formal class certification, "there is an even greater potential for a breach of fiduciary duty owed the class during settlement." *In re Bluetooth*, 654 F.3d at 946. "Accordingly, such agreements must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair." *Id*. As noted above, courts consider whether there are "subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *Id*. at 947. Several such signs are: (1) "when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded; (2) "when the parties negotiate a 'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds"; and (3) "when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund." *Id*.

The proposed settlement does not include a "clear sailing" agreement and is fully non-reversionary with all unclaimed funds to be given as a *cy pres* award to NACA. Dkt. No. 53-3. As discussed below in connection with class counsel's unopposed motion for fees and costs, counsel are seeking fees that are less than 25% of the Global Settlement Fund and considerably lower than their claimed lodestar. This factor weighs in favor of approving the settlement.

### 5. Experience and Views of Counsel

As noted above, the Court is satisfied that counsel meet the adequacy requirement and finds no basis on the record presented to question the competence of Mr. Taafua's counsel, who aver that they have considerable experience in consumer litigation and believe that the proposed settlement is fair and reasonable. Dkt. No. 53-2 ¶¶ 62-63. This factor weighs in favor of settlement.

### 6. Presence of a Government Participant

A court may not grant final approval of a class action settlement until the Class Action

Fairness Act ("CAFA") notice requirement is met. 28 U.S.C. § 1715(d) ("An order giving final approval of a proposed settlement may not be issued earlier than 90 days after the later of the dates on which the appropriate Federal official and the appropriate State official are served with the notice required under subsection (b)."). "Although CAFA does not create an affirmative duty for either state or federal officials to take any action in response to a class action settlement, CAFA presumes that, once put on notice, state or federal officials will raise any concerns that they may have during the normal course of the class action settlement procedures." *Bellinghausen*, 306 F.R.D. at 258 (citation omitted).

Although no government entity is a party to this action, Mr. Taafua previously represented that QGT will have provided the required CAFA notice no later than April 24, 2020. Dkt. No. 49 at 32 n.22. QGT confirmed at the final fairness hearing that such notice was provided and that it has received no substantive responses.

### 7. Reaction of the Class Members to the Proposed Settlement

Courts recognize that the absence of a large number of objections to a proposed class action settlement supports the reasonableness of the settlement terms. *Bellinghausen*, 306 F.R.D. at 258 (citation omitted); *see also Der-Hacopian*, 2020 WL 7260054 at *6 (same). As discussed above, only two class members requested exclusion from the settlement, and the Court is not aware of a single class member who objects to the settlement. The lack of objections and low number of requested exclusions relative to the size of the class as a whole indicates support among the class members and weighs in favor of approving the settlement.

### 8. Equitable Treatment of Class Members Relative to Each Other

In assessing whether "the proposal treats class members equitably relative to each other," Fed. R. Civ. P. 23(e)(2)(D), the Court considers whether the proposed settlement "improperly grant[s] preferential treatment to class representatives or segments of the class . . . ." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1079 (internal quotations and citation omitted). Under the proposed amended settlement, each class member who remains in the settlement class will receive payment from the Net Settlement Fund based on the number of consumer reports that QGT procured for that individual. Allocating the Net Settlement Fund on a *pro rata* basis in this

manner is equitable and fair. Additionally, for the reasons discussed above, the Court is satisfied that the proposed greater allocation of funds for indisputably timely claims fairly reflects the risks of statute of limitations issues. This factor weighs in favor of approving the settlement.

### C. Motion for Attorneys' Fees and Costs

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Additionally, the FCRA provides for reasonable attorney's fees and costs as determined by the Court. *See* 15 U.S.C. §§ 1681n(a)(3), 1681o(a)(2).

"The Ninth Circuit has approved two methods of determining attorneys' fees in cases where, as here, the amount of the attorneys' fee award is taken from the common fund set aside for the entire settlement: the 'percentage of the fund' method and the 'lodestar' method." *Bellinghausen*, 306 F.R.D. at 259-260 (citing *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002)). "The district court retains discretion in common fund cases to choose either method." *Id*. "Because the benefit to the class is easily quantified in common-fund settlements, [the Ninth Circuit has] allowed courts to award attorneys a percentage of the common fund in lieu of the often more time-consuming task of calculating the lodestar." *In re Bluetooth*, 654 F.3d at 942. "Under either approach, '[r]easonableness is the goal, and mechanical or formulaic application of either method, where it yields an unreasonable result, can be an abuse of discretion.'" *Bellinghausen*, 306 F.R.D. at 260 (quoting *Fischel v. Equitable Life Assurance Soc'y of the U.S.*, 307 F.3d 997, 1007 (9th Cir.2002)).

In their unopposed motion for fees and costs, Mr. Taafua's counsel seek $41,967.33 in fees and $1,993.72 in costs. Dkt. No. 53. With respect to the requested fees, counsel avers that her firm spent a total of 152.40 hours in this litigation, resulting in a total lodestar of $74,727.00. Dkt. No. 53-2 ¶ 103. Nevertheless, their fee request remains at $41,967.33, the same sum sought when Mr. Taafua sought preliminary approval of the parties' amended settlement. With respect to hourly rates, the rates requested are between $325 and $400 for associates, and $625 to $850 for partners. *Id*. ¶¶ 92-97.

Counsel's billing rates used to calculate their lodestar are reasonable and in line with

14

prevailing rates in this district for attorneys of comparable experience, skill, and reputation. *See, e.g., Der-Hacopian*, 2020 WL 7260054 at *8 (approving in an FCRA class action hourly rates at $400 for associates and $500-$775 for partners) (citing cases). While counsel have not submitted their timesheets to the Court, their requested fees are considerably lower their claimed lodestar. Additionally, the Court finds that the 152.40 hours counsel say they spent working on this matter is not unreasonable for litigation that has been pending for a little over two years and involved two prior motions for preliminary approval of the parties' proposed settlements. Moreover, counsel have obtained a good result for the class, with only two requests for exclusion and no objections. Further, the Court recognizes that counsel assumed substantial risk in litigating this action on a contingency fee basis, and incurring costs, with those risks being "even higher in the current economic climate." Dkt. No. 53-2 ¶ 84. Counsel also demonstrated persistence, even after the Court denied Mr. Taafua's motion to approve the parties' original settlement. Having reviewed counsel's costs (Dkt. No. 53-4), the Court finds that those expenses reasonably were incurred.

Accordingly, the Court grants the motion for payment of $41,967.33 in fees and $1,993.72 in costs.

### D. Service Award

While service awards are permissible, they must also be reasonable. *Staton*, 327 F.3d at 977. Courts must evaluate such awards individually, using "relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonabl[e] fear[s of] workplace retaliation." *Id*. (internal quotations and citation omitted). Courts in this district have recognized that a $5,000 service award, as a general matter, is a reasonable amount. *See Schofield*, 2019 WL 955288 at *7.

Mr. Taafua requests a service award of $3,500 for his time and effort in assisting counsel with the investigation of his claims, gathering information, and reviewing the settlement. Dkt. No. 53-8. The Court has some concern about the requested incentive award which is approximately three times higher than the maximum estimated settlement payment other class members might receive. Additionally, as noted in the Court's order preliminarily approving the settlement, to the

15

extent the Amended Settlement Agreement suggests that the requested service award is also meant to compensate Mr. Taafua for his execution of a general release (Dkt. No. 53-3, Section III.8), that is not a purpose for which service awards are intended. *See SFBSC Mgmt., LLC*, 944 F.3d at 1046-47. Nevertheless, in view of the benefit Mr. Taafua helped obtain for the class, the requested $3,500 is appropriate and Mr. Taafua's motion for the same is granted.

## IV. CONCLUSION

Based on the foregoing, Mr. Taafua's motion for final approval of the class action settlement, as well as his motion for class counsel's attorneys' fee and costs, are granted. The parties and JND are directed to implement the terms of this order and the class action settlement in accordance with the terms of the Amended Settlement Agreement. The Clerk of Court shall enter judgment and close this file.

**IT IS SO ORDERED.**

Dated: February 16, 2021

*Virginia K. DeMarchi*
VIRGINIA K. DEMARCHI
United States Magistrate Judge